## THE JAMES McGEE.

## THE LAKE CITY.

(District Court, S. D. New York. May 19, 1924.)

1. **Admiralty ⊜⟶21—New Jersey death statute held applicable to death of seamen on vessel owned by United States from collision on high seas with ship owned by New Jersey corporation.**

   New Jersey statute (2 Comp. St. 1910, p. 1907, § 7) creating liability for wrongful death *held* to authorize recovery for death on high seas of seamen on ship owned by United States, which was sunk in collision with ship owned by New Jersey corporation.

2. **Admiralty ⊜⟶4—General rule as to what law governs obligations arising on high seas stated.**

   The seas are regio nullius, and court must enforce those obligations arising on seas which its own sovereign imposes in like case, or those which sovereign to whom person concerned is accredited by international convention, which usually makes domicile the test.

3. **Collision ⊜⟶16—Master, assuming privilege on insufficient evidence, held not at fault, when vessel was in fact privileged.**

   Master, assuming on insufficient evidence that vessel was privileged, was not at fault, where vessel was in fact privileged.

4. **Collision ⊜⟶108—Master's failure immediately to grasp perilous situation held not negligence.**

   Where perilous situation of vessel had already arisen when master came on bridge, he could not be held personally negligent in failing immediately to grasp situation and countermanding orders previously made by those on watch while he was below, so as to bar claim for his death.

5. **Collision ⊜⟶122—Under New Jersey law, no presumption that statutory fault contributed to collision.**

   Under New Jersey law (2 Comp. St. 1910, p. 1907, § 7), there is no presumption that statutory fault in failing to blow when vessel ported contributed to collision, but this must be proved.

In Admiralty. Proceeding by the owner of the James McGee to limit liability arising from collision with the Lake City, owned by the United States. On exceptions to commissioner's report in favor of all claimants. Exceptions overruled, and report confirmed.

Sur exceptions to a commissioner's report in the admiralty. The suit was on petition to limit liability arising from a collision on the high seas on October 3, 1918, between the James McGee, owned by the petitioner, a New Jersey corporation, and the Lake City, owned by the United States. A number of the crew of the Lake City were drowned when their vessel sank, and their representatives brought actions in personam against the petitioner in the state courts, to enjoin which this proceeding was begun. At the trial both ships were held at fault and a reference was ordered. The commissioner found for all the claimants. The question is whether the claimants have provable claims, and whether the claim for the master's death is barred by his contributory negligence.

William H. McGrann, of New York City, for petitioner.
George B. Covington, of New York City, for one claimant.

LEARNED HAND, District Judge (after stating the facts as above). [1] In view of the confusion in the cases touching the liability for death on the high seas, it is important at the outset to note

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

exactly what are the facts at bar. On the high seas a ship owned by a New Jersey corporation sinks a ship owned by the United States, and kills some of the latter's crew, either on board that ship or in the adjacent waters, by drowning. The New Jersey Law (2 Comp St. 1910, p. 1907, § 7) provides a remedy for death by negligence; the United States has accepted no such liability for the negligence of its officers or agents. While the decisions strike closely about such a situation, none quite reach it, except The Middlesex (D. C.) 253 Fed. 142. For example, a state statute will cover the death of a member of another ship's crew, caused by collision upon navigable waters of the United States, but within the boundaries of the state, when actions are brought in state courts (Steamboat Co. v. Chase, 16 Wall. 522, 21 L. Ed. 369; Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819), or libels are filed in the admiralty (The City of Norwalk [D. C.] 55 Fed. 98, affirmed 61 Fed. 364; Robinson v. Detroit, etc., Co. [C. C. A. 6] 73 Fed. 883, 20 C. C. A. 86). For an injury occurring on a British ship, a seaman must look to the British law. The Lamington (D. C.) 87 Fed. 752.

In The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, the question arose between two Delaware ships, and the death statute of Delaware was applied against the owners of the guilty ship in favor of the victims of a collision in which the other was sunk. The ground of the decision was that the act created a personal obligation against the Delaware owner. In La Bourgogne, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973, which followed closely, claims were allowed under the French law for the death of passengers of the guilty ship, though the local limitation statute was applied. There the collision was between a British and a French ship, and if claims had been filed because of the death of victims from among the British crew the case would have been on all fours. But since no point was made of the domicile of the victims, and the decision turned (page 138 [28 Sup. Ct. 680]), on The Hamilton, supra, the case appears to me in substance the same as that at bar.

In The E. B. Ward, Jr. (C. C.) 17 Fed. 456, Judge Pardee indicated, though perhaps he did not decide, that such claims as those at bar were good, but in The Middlesex, supra, Judge Morton squarely held the opposite. The Sagamore (C. C. A. 1) 247 Fed. 743, 159 C. C. A. 601, is not in point. In that case claims for the death of members of a Massachusetts crew were not allowed under Massachusetts law against British owners of the guilty ship. The case does not hold that such claims would not have been good under British law, so far as applicable to the facts.

The petitioner insists that the rule respecting the limitation of liability shows that The Hamilton, supra, depended on the fact that both vessels were owned in Delaware. I cannot find out from the books whether an owner's right to limitation of liability is to be considered to touch the right or the remedy. In Thomassen v. Whitwell, 9 Ben. 403, 406, Fed. Cas. No. 13929, Judge Benedict said that it was not matter of remedy, and though his decision was reversed in The Great Western, 118 U. S. 534, 6 Sup. Ct. 1172, 30 L. Ed. 156, the Supreme Court did not touch that point. But Judge Benedict in The State of Virginia

(D. C.) 60 Fed. 1018, seems to have quite changed his views, or at least it is impossible to see how otherwise he could have reached the result he did. Judge Holt, in the Titanic (D. C.) 209 Fed. 501, squarely held that the question was of right and not of remedy, while, on the other hand, I read Judge Shipman's decision in Levison v. Oceanic Steam Navigation Co., 15 Fed. Cas. 422, as holding directly the opposite.

The petitioner's chief reliance is the language used in The Scotland, 105 U. S. 24, 29, 30, 26 L. Ed. 1001, when it was said in the case of a collision between an American and a British ship that, where the flags were different, our local limitation statute controlled, because the court would in such cases apply local law, under which in the case at bar there could be no relief. The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; The Alaska, 130 U. S. 201, 9 Sup. Ct. 461, 32 L. Ed. 923. I agree that this case cannot be taken as a positive affirmation that the question of limitation is one of remedy, and indeed the qualification that, if the flags had been the same, the law of the flag would control, seems to preclude that idea. Still I cannot quite see how the actual decision can be on any other theory. If the question affects the right, the result of The Scotland, supra, was that the obligation for the tortious act of a British owner on the high seas is to be determined by American law, which had no application either to the place or to the person. Of course, there is no dialectical difficulty in such a conclusion, because no court can in the nature of things apply any law but its own. Yet it contradicts all general conventions accepted in such matters, unless of course the foreign law were positively repellant to our local ethos. I cannot regard the decision as necessarily implying that limitation of liability goes to the right.

The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152, adds nothing to The Scotland, supra. However, a necessary consequence of the decision in La Bourgogne, supra, though not of the ratio decidendi is to foreclose the petitioner from any benefit of the language in The Scotland, supra. As I have said, in that case the validity of the claims was determined by French law, and the right to limit by the lex fori. Now I cannot conceive how it was possible to reach this result, if limitation was a part of the obligation arising from the tort. No attention was paid to the domicile of the victims, nor is there the faintest reason to suppose that the result would have been different, had some member of the Cromartyshire's crew been drowned. Why, then, if limitation be a matter of right, did the court take this inconsistent position, and how does it make a difference, as Judge Holt certainly supposed, whether a foreign ship strikes an iceberg, as in The Titanic, supra, or another ship?

Whatever may be the result as to limitation, I am satisfied that the case is at least open on principle, and that the language of The Scotland, supra, does not form a rule for its decision. I cannot help thinking that much confusion arises from the habit of speaking of a ship on the seas as a part of the territory where she is owned. That is a fiction recognized as such, and the Supreme Court has recently used other language to describe the facts in Cunard S. S. Co. v. Mellon, 262 U. S. 100, 123, 43 Sup. Ct. 504, 507 (67 L. Ed. 894, 27 A. L. R. 1306):

"The jurisdiction which it is intended to describe arises out of the nationality of the ship, * * * and partakes more of the characteristics of personal than of territorial sovereignty."

See, also, International Mer. Mar. v. Stuart (D. C.) 285 Fed. 79, 81, 82, which, though reversed, discussed this aspect of the question on the same theory.

[2] In the very nature of things, courts can enforce no obligations which are created elsewhere; when dealing with such obligations, they merely recognize them as the original of the copies which they themselves enforce. But the seas are regio nullius, and upon them there is no sovereign who imposes obligations on any one. When, therefore, a court has to consider obligations said to arise because of events occurring on the seas, it has no alternatives but to enforce those which its own sovereign imposes in like case, or those which that sovereign imposes to whom the person concerned is accredited by common international convention, which usually makes domicile the test.

There is no reason why a sovereign should not undertake to impose on persons domiciled within its borders obligations conditioned on events occurring on the seas, since there is no other sovereign with whom its will conflicts. Therefore the question comes merely to whether the sovereign of the domicile has clearly enough indicated such a purpose. If so, there is as much reason why the court of another sovereign before whom the case arises should recognize those obligations, and impose similar ones, as though the events in question had arisen within the borders of the sovereign of the domicile.

This is the rule, as I understand it, of The Hamilton, supra, pages 405, 406 (28 Sup. Ct. 134). It was in that case an irrelevant incident that the victims of the collision were on board a ship of the state of Delaware. That would be material indeed if that state, which was the sovereign of the guilty ship, imposed no obligatio restitutionis in integrum upon those domiciled within its borders, except towards other residents of Delaware. But no such point was raised, and doubtless none was possible. In the case at bar it does not matter that the victims were on a ship of the United States, and that there was at that time no statute of the United States which gave them any such right. The Sagamore, supra, which was the converse of the situation at bar, was necessarily decided as it was. And so I agree with the learned commissioner, whose unusually lucid and comprehensive report deals most adequately with the subject.

[3] There remains only the question of the contributory negligence of the master, which turns on the evidence. The Lake City was in fact the privileged vessel as she had the McGee on her port hand and the McGee had her on her own starboard hand. Judge Knox held the Lake City at fault for not making out the McGee's masthead light, a failure which was already corrected before the master came on the bridge, and for assuming that she was privileged. Perhaps she had no right so to assume, but in fact she was such, and I cannot see that it was a fault to assume on insufficient evidence that to be true which in fact was true. In any case the master cannot be charged with that.

[4] Finally, the learned judge found that the Lake City should have blown when she ported, and should have starboarded instead of porting.

The evidence of Insley, whom I assume to be the only witness to the point, though the record has not been submitted on this hearing, is that the master came up at the time he gave the quartermaster his first order to port. The interval between the two orders he naturally cannot fix, and I agree with the commissioner in believing that his recollection of two minutes means nothing.

Therefore, when the master came in charge, the situation was already such that some action in extremis was necessary. I call it action in extremis, because it began with a movement off to the eastward, which gradually increased into a full swing. Clearly it would have been the worst possible maneuver to change the first order and attempt to correct it by starboarding. The first instinct of a mariner in such circumstances is to port, and, though it be wrong, at least it gives the other vessel a chance also, under a port helm, to pass port to port. There is some likelihood that the giving way vessel will adopt the same navigation, and will not try, as the McGee did, to cross the privileged vessel's bows under a starboard helm. Therefore, if the master was at fault personally, it must be because he failed to act properly before the helm had been ported for the first time.

The evidence leaves it altogether uncertain how long before that order was given he reached the bridge. It is entirely consistent with it that, when he got there, the need of action had already arrived. It would be in my judgment a great injustice to charge him with the duty of an immediate grasp of the situation, of reversing a maneuver which was necessary in the judgment of those who had been on watch while he was below, and of risking such an entire collapse of any consistent plan of navigation as must have resulted from countermanding Insley's orders.

[5] There remains only the failure to blow when the Lake City ported. That, being a statutory fault, would carry the presumption of contributing to the collision, if the obligations of the parties were to be determined by the rules of the sea. But that is not the case, because the obligation arises under the New Jersey statute, and as the advocates for the McGee well argue, and the learned commissioner has found, the rights of the parties are to be determined by that statute. For instance, the rule of divided damages does not apply. The A. W. Thompson (D. C.) 39 Fed. 115. Now the New Jersey law provides that, if the death "be caused by wrongful act * * * such as would * * * have entitled the party injured to maintain an action" (2 Comp. St. 1910, p. 1907, § 7), the right shall arise. But the wrongful act of the petitioner would have entitled the master to maintain an action in New Jersey, unless some neglect of his own had been shown to contribute to his injuries. In such an action there would have been no presumption that a statutory fault contributed to the collision.

While, therefore, it might be possible to associate the master with the fault of failing to blow when the helm was ported, the consequences of that fault must be ascertained as though this were an action at law in New Jersey. So viewed, it is impossible to say that, had the Lake City blown, it would have prevented the collision; certainly it is impossible to say so on this record. The probabilities are that the two

vessels maneuvered in extremis by instinctive decisions taken soon after the navigation had at length become obviously perilous. Thus, though for somewhat different reasons, I concur with the learned commissioner in finding that contributory negligence was not proved.

It is indeed true that this results in refusing to apply here what is normally a rule of procedure of the admiralty. But that is also the case as respects the division of damages, and the period of limitation. The Harrisburg, supra. Under Lord Campbell's Act, much is held to touch the right which would normally be merely a question of remedy. This is another instance of the same thing.

Exceptions overruled; report confirmed; final decree to pass thereupon.