Wallace HIGA, Administrator of the Estate of Takeichi Higa, Deceased, Appellant,

v.

TRANSOCEAN AIRLINES, a corporation, Appellee.

No. 14592.

United States Court of Appeals Ninth Circuit.

Dec. 15, 1955.

Rehearing Denied Feb. 25, 1956.

Shiro Kashiwa, Genro Kashiwa, Honolulu, Hawaii, for appellant.

Jesse H. Steinhart, John J. Goldberg, Neil E. Falconer, San Francisco, Cal., Pratt, Tavares & Cassity, Honolulu, Hawaii, for appellee.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and BYRNE, District Judge.

DENMAN, Chief Judge.

This is an appeal from a decision of the United States District Court for the District of Hawaii in a diversity suit which dismissed appellant's complaint for damages under the Death on the High Seas Act, 46 U.S.C.A. § 761, to be determined by a common law jury since it was brought as a common law civil suit rather than in admiralty. Jurisdiction was based on diversity of citizenship, the deceased Higa and his administrator in a Hawaiian proceeding being citizens of Hawaii, and the plane owned by a California corporation.

Takeichi Higa was a passenger on a Transocean Airlines airplane, admittedly not a plane to land on or travel the water, which crashed into the Pacific Ocean 300 to 400 miles from Wake Island when flying in the direction of Honolulu. Appellant is Higa's administrator and he brought this action for the benefit of Higa's parents, alleging that Takeichi Higa's death was caused by the plane's crashing into the ocean.

Since this is a diversity suit brought in the United States District Court for the Territory of Hawaii, seeking a common law remedy for a death on the high seas outside territorial waters, appellant is required to show that the law of Hawaii had created jurisdiction in that court to entertain such a common law action. The Hawaiian code has a wrongful death statute,[1] but there is no provision of that code or decision of the Hawaiian courts making it applicable to death on the high seas beyond the territorial waters.

1. Revised Laws of Hawaii, § 10486.

There is much that is said in Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 and in Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, a tort case for a wrongful death on navigable waters *within* the State of California, which seems to warrant our holding that the constitutional provisions respecting Congressional control of the admiralty jurisdiction, prevented the Territory from applying its death liability statute to such a tortious death as is here involved. However, we prefer to consider the appeal on other than a constitutional ground, since we hold that the court otherwise lacked jurisdiction.

The pertinent portion of the text of the Death on the High Seas Act is:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of * * * the Territories * * * of the United States, the personal representative of the decedent *may* maintain a suit for damages in the district courts of the United States, *in admiralty* * * *." [Emphasis added.]

Appellant contends that the jurisdiction is not confined to the admiralty jurisdiction of the United States District Court because of the use of the word "may" in the phrase "may maintain". He contends that the Congress intended that the substantive right so created "may" be enforced not only "in admiralty" but in a common law civil suit, with a jury trial. We do not agree with this construction of the word "may" as including jury trial.

This contention of a right to jury trial was discussed in the House in the consideration of the bill which was enacted that day, March 30, 1920. The discussion covering five pages of the Congressional record of that day clearly shows that the admiralty jurisdiction is exclusive. Appellant does not question that the Committee Reports, Senate Report 216 and House Report 674, 66th Congress, support the exclusive character of the "in admiralty" provision.

Higa further argues that the words "may maintain" are used permissively allowing suit to be brought elsewhere and that Congress would have used the phrase "shall maintain" if an exclusive remedy was intended. This contention leads to the obvious absurdity that Congress imposed a duty to sue on a claimant, whether or not he so desired. We hold that the word "may" is used permissively but only as a permission to sue in admiralty.

Higa's main contention is that the Death on the High Seas Act creates a substantive right and that Congress cannot create such a right solely in admiralty and at the same time prevent its being sued on at common law by a litigant having it, in any court, state or federal. This contention is based on the "saving to suitors" clause of 28 U.S.C. § 1333.

In considering this contention it is of importance that the High Seas Act deprived no state or federal court of a then existing right. As to the state courts 46 U.S.C.A. § 767 provides:

"§ 767. Exceptions from operation of chapter. The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter."

As originally drafted, the bill had an added clause limiting the state to acts in its own waters, reading: "as to causes of action accruing within the territorial limits *of any state*". Representative Mann offered an amendment striking out this clause. Mann gave as his reason for striking out the limiting clause that it was to save state statutes giving jurisdiction in high seas death cases. Some opposed because they wanted the Act to be exclusive. Others agreed to the amendment on the ground that § 767 as passed would be held invalid on the ground of the constitutional control of Congress discussed above. Congress agreed with Mann who offered the

amendment and the limitation was stricken from the bill.

Further, Mann no doubt had in mind some one of the federal cases, holding that the laws of the state controlled the action of persons within ships on the high seas and had construed their death statutes as applying there. Southern Pac. Co. v. De Valle Da Costa, 1 Cir., 1911, 190 F. 689; International Nav. Co. v. Lindstrom, 2 Cir., 1903, 123 F. 475; The James McGee, S.D.N.Y.1924, 300 F. 93; The E. B. Ward, Jr., C.C.E.D.La. 1883, 17 F. 456.

Even if Congress had not agreed with the interpretation of the proponent of the amendment, we would hesitate to construe the exceptive clause as depriving the *states* of the then existing jurisdictions shown as exercised in the above cited cases.

As to the federal courts Congress had enacted the saving to suitors provision, 28 U.S.C.A. 41(3), expressly depriving the district courts of the jurisdiction over claims of such passengers as Higa prior to the enactment of the Death on the High Seas Act, the pertinent portions of which read:

"(3) Admiralty causes, seizures, and prizes. Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy * * *. The jurisdiction of *the district courts* shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the workmen's compensation law of any State, District, Territory, or possession of the United States." [Emphasis supplied.]

It was this statute respecting the district courts and the holding in The Har-

risburg, 119 U.S. 199, 7 S.Ct. 140, 30 L. Ed. 358 that no such right existed in the federal courts which lead to the Death on the High Seas Act.

The saving to suitors clause of 28 U. S.C.A. 41(a) was amended in 1948 in 28 U.S.C. § 1333 as a part of the general amendment of the federal codes to avoid distinction between suits at law and equity [2] to read:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they *are* otherwise entitled." [Emphasis added.]

The reviser's statement in the footnote well may mean that the amendment merely restated the law as it was before the Death on the High Seas Act was passed, and hence the italicized word "are" in the phrase "to which they *are* * * * entitled", would foreclose a common law claim such as here asserted.

However, assuming that § 1333 refers to subsequent claims, we think Congress has created a substantive admiralty right to be asserted *solely* in the federal courts in admiralty, by the plain words of the High Seas Act that the administrator "may maintain a suit for damages in the district courts of the United States, *in admiralty*."

This question was raised in the discussion of the High Seas bill in the House, where it was passed after Congressman Volstead, the author of the bill, answered it on the floor of the House in the affirmative. The language of the discussion is:

"Mr. Igoe. Does not the gentleman think that he should inform the gentleman from Ohio (Mr. Rick-

2. Of this change the reviser's notes on the section state:

"The 'saving to suitors' clause in said sections 41(3) and 371(3) was changed by substituting the words 'any other remedy to which he is otherwise entitled' for the words 'the right of a common-law remedy where the common law is competent to give it.' The substituted language is simpler and more expressive of the original intent of Congress and is in conformity with rule 2 of the Federal Rules of Civil Procedure abolishing the distinction between law and equity."

etts) that *this proceeding will be in admiralty and that there will be no jury,* so that no Member of the House may have any misunderstanding about it? That question was thrashed out and it was decided best not to incorporate into this bill a jury trial because of the difficulties in admiralty proceedings." (Page 4482. Emphasis added.)

"Mr. Moore of Virginia. \* \* \* The purpose of this bill, as I understand it, is to give exclusive jurisdiction to the admiralty courts where the accident occurs on the high seas.

"Mr. Volstead. That is it." (Page 4483.) Congressional Record, Volume 59, Part V.

■■ Construing the Act's words, if Higa's diversity proceeding at common law were permitted by the High Seas Act it would make superfluous its words "in admiralty." As was stated in Market Co. v. Hoffman, 101 U.S. 112, at pages 115, 116, 25 L.Ed. 782:

"We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, § 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times. Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each."

Concerning the rule of the last sentence, as Judge Goodman has pointed out,[3] another portion of the High Seas Act, section 5, provides:

"Death of plaintiff pending action

"If a person die as the result of such wrongful act, neglect, or default as is mentioned in section 761 of this title during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this chapter for the recovery of the compensation provided in section 762 of this title. Mar. 30, 1920, c. 111, § 5, 41 Stat. 537."

There would be no need to give specifically this right of substitution to existing tort death cases in the district courts if the Act were intended to cover cases in an action at common law.

Higa relies strongly on Galveston, H. & S. A. R. Co. v. Wallace, 223 U.S. 481, at page 490, 32 S.Ct. 205, at page 206, 56 L.Ed. 516, where, the Court stated:

"\* \* \* Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right. But jurisdiction is not defeated by implication. And, considering the relation between the Federal and the state government, there is no presumption that Congress intended to prevent state courts from exercising the *general jurisdiction already possessed by them,* and under which they had the power to hear and determine causes of action created by Federal statute. Robb v. Connolly, 111 U.S. [624], 637, 4 S. Ct. 544, 28 L.Ed. [542] 546." (Emphasis added.)

As seen above, the High Seas Act in Section 7, as amended by the Mann pro-

3. At page 95 in his excellent opinion in Wilson v. Transocean Airlines, D.C., 121 F.Supp. 85.

posal, recognized the jurisdiction "already possessed" in New York to entertain suits for death on the high seas. Hence this case respecting a prior existing right in the state court expresses in its first sentence what we regard as the applicable law here.

Higa also relies on United States v. Bank of New York, 296 U.S. 463, 479, 56 S.Ct. 343, 348, 80 L.Ed. 331, 1936, for the proposition that "the grant of jurisdiction to one court does not, *of itself,* imply that the jurisdiction is to be exclusive." (Emphasis added.) From this language he argues that the Death on the High Seas Act should not be construed to provide for exclusive jurisdiction "in admiralty" as its text provides.

The significant phrase in the quoted language is "of itself." There was nothing in the Bank of New York case to indicate that jurisdiction was to be exclusive other than the fact that 28 U.S.C. § 41 (now 28 U.S.C. § 1345) gave jurisdiction to the district court in all civil suits brought by the United States as a plaintiff. Often the rights of the United States as a plaintiff could be better determined in a state court, especially where the question was one of claims to a fund as was the case in United States v. Bank of New York.

Here, however, the Death on the High Seas Act creates the right to recover for wrongful death and designates not only the federal court for its enforcement, but a particular jurisdiction of that court. The right is a matter of federal law where state courts would have no special competence. There is more here than "the grant of jurisdiction, of itself * * *" which indicates that jurisdiction was intended to be exclusive.

Higa also relies on Panama R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 considering the Jones Act, 46 U.S.C.A. § 688. There the Supreme Court frankly stated that it was construing that Act to avoid the constitutional question whether the tort being a new creation was cognizable in admiralty. It held that where the seaman is given the right to sue his employer at common law for injuries caused by the latter's negligence, the fact that the tort was maritime in character and that maritime torts are customarily in the admiralty jurisdiction, warranted his suing in admiralty. Here the case is the exact reverse. There is no question of the constitutionality of the Act. The High Seas statute provides that the newly created maritime right is to be considered in the federal courts in which such torts are customarily considered. The case tends to sustain the appellee's contention.

The following district court cases hold an action under the Death on the High Seas Act may be brought in a civil suit and that the remedy is not confined to admiralty. Sierra v. Pan American World Airways, D.C.D.Puerto Rico, 1952, 107 F.Supp. 519; Batkiewicz v. Seas Shipping Co., D.C.S.D.N.Y.1943, 53 F.Supp. 802; Choy v. Pan-American Airways, D.C.S.D.N.Y.1941, 1941 A.M. C. 483. The arguments contained in these cases have been analyzed above. We agree with what we said in The Silverpalm, 9 Cir., 1935, 79 F.2d 598, 600:

"* * * Had the court followed Admiralty Rule 46-1/2 (28 U.S.C.A. following section 723), the mental process of making findings quite likely would have suggested to it the distinction between a cause of action based on the British statute, concerning which its decision might have permitted a suit otherwise than in the limitation proceeding, *and a cause of action arising from the United States statute, which* at that stage in the litigation, at any rate, *should have been confined* to the limitation proceeding and, *in any event,* for death caused on a United States naval vessel outside state territorial jurisdiction, *in admiralty.* Furthermore, in a case of first impression, involving the important question here presented,

the writing of an opinion in accordance with the long-established practice in admiralty in this district would have concentrated the mind of the court on the terms of the United States death statute involved, with its provision that whatever rights the foreign law may confer are to be 'maintained in an appropriate action in admiralty.'"

(Emphasis added.)

See in accord, Wilson v. Transocean Airlines, D.C.N.D.Cal.1954, 121 F.Supp. 85; Iafrate v. Compagnie Generale Transatlantique, D.C.S.D.N.Y.1952, 106 F. Supp. 619.

Our disposition of this case makes unnecessary the determination whether the High Seas Act applies to airplanes which are not in any way water navigating vessels.

■■ We affirm the judgment, since the case is clearly one of the class described in the following language, 223 U.S. at page 490, 32 S.Ct. at page 206, of the Galveston, H. & S. A. R. Co. case, supra, "Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right."

On Petition for Rehearing

PER CURIAM.

■ Higa was granted a rehearing to determine whether the order of the district court dismissing his case without prejudice to file an action in admiralty should be set aside and the case remanded to the admiralty docket of the court below.[1] On appeal this court agreed with the view of the trial judge that an action under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., could be brought only in an admiralty action. Higa raised for the first time in his petition for rehearing the question of

whether the case should have been dismissed or transferred to the admiralty docket. Generally one may not enlarge the scope of an appeal in a petition for rehearing. Jaynes v. United States, 9 Cir., 224 F.2d 367; Mitchell v. Greenough, 9 Cir., 1939, 100 F.2d 1006.

■■ There is no reason to depart from that rule here. Higa's attorney was warned of the possibility that the period of limitation might run while his appeal was pending here. He could have filed an action in admiralty without affecting his right to appeal.

We find no reason to disturb our decision of December 15, 1955, and it remains unaltered.

1939, 103 F.2d 513; Kobilkin v. Pillsbury, 9 Cir., 1939, 103 F.2d 667.

---

1. This court may so remand in an appropriate case. See Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir.,