Helen **SAFIR**, as Administratrix of the goods, chattels and credits which were of Jules Safir, deceased, Plaintiff,

v.

**COMPAGNIE GENERALE TRANSATLANTIQUE**, Defendant.

No. 62 C 595.

United States District Court
E. D. New York.
May 12, 1965.

Richard A. Hornstein, New York City (Paul L. Klein, New York City, of counsel), for plaintiff.

Thomas H. Healey, New York City (Robert S. Blanc, Jr., and Hill, Betts, Yamaoka, Freehill & Longcope, New York City, of counsel), for defendant.

DOOLING, District Judge.

In a civil action in two counts, one for *ante-mortem* damages and a second for wrongful death, based on an accident that plaintiff's decedent sustained on the high seas while a passenger aboard defendant's vessel on June 20, 1960, and which resulted in the death of plaintiff's

decedent on September 30, 1960, defendant moves under Rules 12(b) and 56 to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted and on the ground that the claims are barred of enforcement by a contract provision that is valid under 46 U.S.C.A. § 183b. Plaintiff served a summons without complaint in the Supreme Court, Queens County, on February 19, 1962; the complaint was served on May 16, 1962; the action was removed to this Court on June 1, 1962; and plaintiff was appointed administratrix of her deceased husband on July 19, 1962; the allegation in the complaint that the plaintiff had been appointed administratrix was not then correct.

It is concluded that the first cause of action, for *ante-mortem* damages, will lie, but that, if well-founded in law, it is barred of enforcement by virtue of the clause in the passenger contract, sanctioned by 46 U.S.C. § 183b, which provides:

> "Suits and actions to recover for claims shall not be maintainable unless instituted within four months of the date of their accrual, or the termination of the voyage, whichever shall first occur, except that suits and actions to recover for the bodily injury or death of passengers shall not be maintainable unless instituted within one year from the day when the death or bodily injury occurred; these limitations shall be applicable although the Carrier be a non-resident or foreign corporation. The requirements of this clause cannot be waived by an agent or employee of the Carrier; they may be waived only by express written agreement of a director of the Carrier having authority in the premises. In any case where the time fixed in this ticket for filing claim is less than allowed by law, such time is hereby extended so as not to exceed the minimum lawful time."

It is further concluded that the second cause of action is maintainable under Section 4 and Section 7, first sentence,

of the Death on the High Seas Act (46 U.S.C.A. §§ 764, 767), was removable into this Court as a civil diversity action, was timely brought under that Act (46 U.S.C.A. § 763) and under 46 U.S.C.A. § 183b ("Revised Statutes § 4283A") and is triable in this Court, not as an admiralty but as a civil cause.

■ Since the action was started in the state court and was an action to redress a maritime tort, it can be considered only as one of the class of cases based on maritime tort that can be initiated as a civil action in the state courts, and it can not be considered as a claim cognizable only in the admiralty. There were and are such cases: maritime tort is remediable in state court actions that apply the maritime law as the national courts develop and expound it or the Congress enacts it. Chelentis v. Luckenbach S. S. Co., 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Larios v. Victory Carriers, Inc., 2d Cir. 1963, 316 F.2d 63, 65; Riley v. Agwilines, Inc., 1947, 296 N.Y. 402, 73 N.E.2d 718; Amsterdam v. Cia Naviera Estrella de Plata, 2d Dept. 1959, 8 A.D.2d 947, 190 N.Y.S.2d 604. Cf. Spencer Kellogg & Sons v. Hicks, 1932, 285 U.S. 502, 513–514, 52 S.Ct. 450, 76 L.Ed. 903. See Muscelli v. Frederick Starr Contracting Co., 1947, 296 N.Y. 330, 335, 338, 73 N.E.2d 536; Johnsen v. McAllister Lighterage Lines, Inc., 2d Dept. 1959, 8 A.D.2d 831, 190 N.Y.S.2d 117.

■ The first cause of action, for *ante-mortem* damages, could have been maintained by the decedent in a state court under the "saving to suitors" clause [28 U.S.C.A. § 1333(1)], and could have been removed into this Court as a diversity case although not as a federal-law case. Cf. Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 371, 79 S.Ct. 468, 3 L.Ed.2d 368. The questions, then, are whether it survived to his estate and whether, if it survived, it is barred by the contract limitation. After early hesitation, it is now usual to treat *ante-mortem* damage

claims as surviving the claimant's death and as being disposed of "substantively" under maritime law where survival of tort claims is the law of the tort-feasant shipowner's nominal domicile (United States v. The S. S. Washington, E.D.Va., 1959, 172 F.Supp. 905, 908–909, aff'd on opinion below sub nom. United States v. Texas Co., 4th Cir. 1959, 272 F.2d 711; Petition of Gulf Oil Corporation, S.D. N.Y.1959, 172 F.Supp. 911, 914–917; Montgomery v. Goodyear Tire & Rubber Co., S.D.N.Y.1964, 231 F.Supp. 447, 451–453), or the domicile of the tort-feasor although he is not the shipowner or operator (Abbott v. United States, S.D.N.Y. 1962, 207 F.Supp. 468, 473–474) or the law of the place of tort and, coincidentally, of the victim's domicile (semble, O'Leary v. United States Line Co., 1st Cir. 1954, 215 F.2d 708, 710–711), or the law of the forum, at least where the alleged tort feasor has substantial contacts with it (Williams v. Moran, Proctor, Mueser & Rutledge, S.D.N.Y.1962, 205 F. Supp. 208, 215–216), or the law of forum that would have been available to claimants had they not become party claimants in a limitation proceeding (46 U.S.C.A. §§ 183, 185) in another forum. Petition of Gulf Oil Corporation, supra, 172 F. Supp. at 917–920. The Death on the High Seas Act is, in all these cases, not treated as displacing the earlier law by any preemptive, exclusivity of enactment. Compare Gillespie v. United States Steel Corporation, 1964, 379 U.S. 148, 154, 156, 85 S.Ct. 308, 13 L.Ed.2d 199. And, as the law invoked as giving the cause of action its being, directly or by something analogous to choice-of-law in the shadow of federal-law supremacy, is the maritime and not local law, the local survival statute is essentially implementive and not rights-creative. Cf. Romero v. International Terminal Operating Co. supra, 358 U.S. at 373–378, 79 S.Ct. at 480–483; Gillespie v. United States Steel Corporation, supra, 379 U.S. at 156 and fn. 14, 85 S.Ct. at 313. See The Tungus v. Skovgaard, 1959, 358 U.S. 588, 594–595 and fn. 9, 79 S.Ct. 503, 3 L.Ed.2d 524. State survival law may limit and straiten the pre-existent maritime claim by the very nature of the survival it contributes to it, but it can hardly be supposed to be the generating source of the right.

While a valid and surviving right of action is presented, it is barred of enforcement by the valid provision requiring suit to be commenced within one year. 46 U.S.C.A. § 183b(a). Schwartz v. S. S. Nassau, S.D.N.Y.1963, 223 F. Supp. 374. It follows that defendant is entitled to summary judgment on the first cause of action, for *ante-mortem* damages, and it will be so ordered, the judgment to be delayed of entry until the end of the whole case.

The second cause of action, for wrongful death, presents more complex problems. It may be at once said that the claim is not barred by lapse of time because 46 U.S.C.A. § 183b(c) in substance postpones the start of any lawful contractual limitation period until the date on which a legal representative is appointed in wrongful death cases, the Death on the High Seas Act imposes a two year limitation (46 U.S.C.A. § 763), and New York imposes a three year limitation (now N.Y.C.P.L.R. § 214, subd. 5). The action was timely commenced under any view, and the delay in appointing plaintiff as administratrix does not alter the matter. Missouri, Kansas & Texas Ry. v. Wulf, 1913, 226 U.S. 570, 575–577, 33 S.Ct. 135, 57 L.Ed. 355; Fornaris v. American Surety Co., D.P.R. 1960, 183 F.Supp. 339. Cf. Burnett v. New York Central R. R., 1965, 85 S.Ct. 1050.

If plaintiff had sued in the federal court for wrongful death and had assigned the Death on the High Seas Act as the basis of federal jurisdiction, her case would, very likely, have been docketed as an admiralty case since the Act (except as Sections 4 and 7 may be taken to provide otherwise) appears, and has been held, to restrict suitors in the federal court who base their claims on the Act to the admiralty court. Noel v. Lines Aeropostal Venezolana, 2d Cir. 1957, 247 F.2d 677, 66 A.L.R.2d 997; Higa v.

Transocean Airlines, 9th Cir. 1956, 230 F.2d 780; Iafrate v. Cie. Generale Transatlantique, S.D.N.Y.1952, 106 F.Supp. 619; Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V., S.D.N.Y.1960, 188 F. Supp. 594; Jennings v. Goodyear Aircraft Corp., D.Del.1964, 227 F.Supp. 246; Cf. Devlin v. The Flying Tiger Lines, Inc., S.D.N.Y.1963, 220 F.Supp. 924. See D'Aleman v. Pan American World Airways, 2d Cir. 1958, 259 F.2d 493, 496. It has, indeed, been explicitly held that where diversity of citizenship exists and is invoked as a basis for claiming in the federal court a civil jury trial, the action must be dismissed because the Act confers only a suit-in-admiralty right. Higa v. Transocean Airlines, Inc. supra.

■ In the present case, however, plaintiff sued in the state court and did not cite the Death on the High Seas Act to her support. The case was, expressly, removed to this Court as a diversity case; if it had been an admiralty case, it would not have been within the jurisdiction of the state court and, for that reason, could not have been removed. General Inv. Co. v. Lake Shore & M. S. Ry., 1922, 260 U.S. 261, 288, 43 S.Ct. 106, 67 L.Ed. 244; Wabash Western Ry. v. Brow, 1896, 164 U.S. 271, 17 S.Ct. 126, 41 L.Ed. 431; Harbor Boating Club of Huntington v. Red Star Towing & Transportation Co., E.D.N.Y.1960, 179 F.Supp. 755; Jennings v. Goodyear Aircraft Corp., supra. Contrast Devlin v. The Flying Tiger Lines, Inc., supra (case retained as admiralty case, where statute of limitations had not run, to avoid needless "original" refiling).[1] As a common law action,

entitled to a jury trial, the case as filed in the state court could claim a complex ancestry of precedent antedating the Death on the High Seas Act. The La Bourgogne, 1908, 210 U.S. 95, 137 et seq., 28 S.Ct. 664, 52 L.Ed. 973, sustained a claim for wrongful death occurring on the high seas as warranted by French law and maintainable in limitation proceedings pending in a federal court; the Court, essentially, generalized the theory of The Hamilton, 1907, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 that where the state law common to both of two ships that collide on the high seas countenances wrongful death suits, the wrongful death claims are cognizable in federal court limitation proceedings administering the maritime law, notwithstanding the supposed failure of the maritime law to accept the wrongful death action as one of its general principles. Hence revival of claims, although not provided by maritime principle, was recognized in admiralty because it existed outside the admiralty. Judge Learned Hand sought to give the idea theoretical breadth in The James McGee, S.D.N.Y.1924, 300 F. 93, 96 by extending the "flag" analysis in a collision case to give a recovery for the death of one aboard a ship the law of which did not grant a wrongful death action where the law of the second ship, which was at fault, did allow such a right of action; Judge Hand's analysis discarded the view that The Hamilton, supra, depended on the idea that a ship was an extension of the territory of its sovereign and put the result on the concept of the legislative power of the sovereign of

1. The American Law Institute, STUDY OF THE DIVISION OF JURISDICTION BETWEEN STATE AND FEDERAL COURTS, Tentative Draft No. 3, § 1312(e) would provide that a civil suit of exclusively federal cognizance brought (erroneously) in a state court and removed to the federal court would be treated as if it had been initiated in the federal court on the date of removal and it would not be dismissed. That would solve the problem of the second cause of action. Present law seems not to permit that course [see Commentary to Section 1313(e), p. 54] even where, as in the

present instance in which a jury has been waived, both parties can be presumed to be willing to treat the case as pending in admiralty. However, since the point has not been presented by motion, or supported or opposed by argument, there is no present warrant for considering whether the technique of the Devlin case can be extended to the case where at the time of removal the statute of limitations had not run and the parties implicitly joined in assenting to a federal non-jury trial. Cf. Burnett v. New York Central R. R., 1965, 85 S.Ct. 1050.

the forum to impose the obligation effectively as, necessarily, an aspect of its law of Conflict of Laws (300 F. at 96).

The James McGee implies that so far as the high seas have been concerned—a realm without a sovereign, or, perhaps, the common of all sovereigns (Cf. The Lottawanna, 1875, 88 U.S. (21 Wall.) 558, 571–577, 22 L.Ed. 654)—the touchstone of legitimacy for law extension into the high seas has been the power to make judgments effective *in personam* or *in rem* (Cf. McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608), and that the choice of conduct-governing rules (as distinguished from rules for revival of and transfer of claims) is by familiar Conflict of Laws techniques. That is the result early reached in American Steamboat Co. v. Chase, 1872, 83 U.S. (16 Wall.) 522, 21 L.Ed. 369, which may be thought to hold that the existence and limitations of the federal admiralty jurisdiction do not contract the states' power to give a remedy at common law for torts resulting in death notwithstanding that the tort was maritime and concurrently remediable in admiralty; nothing in the case was made to turn on the then irrelevant fact that the tort occurred in waters within the state. Cf. Panama R. R. v. Vasquez, 1926, 271 U.S. 557, 561, 46 S.Ct. 596, 70 L.Ed. 1085; Just v. Chambers, 1941, 312 U.S. 383, 389, 61 S.Ct. 687, 85 L.Ed. 903. But cf. Newburgh Land & Dock Co. v. Texas Co., 2d Cir. 1955, 227 F.2d 732, 733–734.

The New York courts have long entertained actions for maritime tort resulting in death, utilizing the "law of the flag" concept where the vessel was of New York registry, the shipowner a New Yorker, and the death occurred on the high seas, but saying also that foreign tort claims would generally survive if at the place of tort there was a law similar to New York's wrongful death statute. McDonald v. Mallory, 1879, 77 N.Y. 546. The Court of Appeals emphasized that tort claims are transitory, where the tort occurred on the waters of another state having a statute similar to but not

the same as New York's, and the plaintiff administratrix was appointed in New York (Leonard v. Columbia Steam Navigation Co., 1881, 84 N.Y. 48); the court said broadly that "an action will lie when the common law, or the statutes of different States or countries correspond." In dictum Cavanagh v. Ocean Steam Nav. Co., Sup., N.Y.Co.1890, 13 N.Y.S. 540, 541, treated as maintainable in New York an action commenced by a New York administrator of a passenger killed in a collision on the high seas between two vessels owned by the English defendant; the similarity of Lord Campbell's Act to the New York wrongful death statute was considered enough to warrant the maintenance in New York of a transitory tort action.

New York has continued after as before the passage of the Death on the High Seas Act to entertain actions for wrongful death on the high seas. Elliott v. Steinfeldt, 1st Dept. 1938, 254 App. Div. 739, 4 N.Y.S.2d 9; Ledet v. United Aircraft Corp., 1961, 10 N.Y.2d 258, 219 N.Y.S.2d 245, 176 N.E.2d 820. It now, generally, regards its own wrongful death statute, Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 130, as implementive and the maritime law, as determined by the national courts and the Congress, particularly through the Death on the High Seas Act, as furnishing the conduct-governing rules. See Riley v. Agwilines, Inc., supra; see The Tungus v. Skovgaard, supra, 358 U.S. at 592, and fn. 8, 604–605, 608 fn. 8, 79 S.Ct. 503. Historically, New York has not been supposed incompetent to determine its own law, including its Conflict of Laws rules (Cf. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477). When it determines, on a choice of law basis, to invoke a particular set of rules as dispositive of the interests of litigants properly before its court, that set of rules, no matter what its textual provenance, becomes the law of New York. Cf. Van Dusen v. Barrack, 1964, 376 U.S. 612, 637, 642, 84 S.Ct. 805, 11 L.Ed.2d 945. So, in the Elliott and Ledet cases New York has

decided that its own wrongful death statute is the source of its jurisdiction and that it implements the Death on the High Seas Act as the paramount law determining what conduct is tortious; that Act is, however, not viewed as conferring an admiralty jurisdiction on New York's courts, nor as confining all the relief it contemplates to federal admiralty courts, nor as furnishing the element of revival or re-creation of the cause of action for tort; it is viewed as a paramount substantive enactment of conduct-governing rules. The reason of this is, evidently, the sense that the New York wrongful death statute, while a competent means to invoke jurisdiction and regulate the extent of revival in that context of a right arising first under maritime law, should not be thought to extend as a conduct-governing enactment to the high seas. That New York puts the consequence of its own wrongful death statute in this subtle adjustment to the maritime law content that the Death on the High Seas Act in turn uncertainly invokes (See, e. g., Chermesino v. Vessel Judith Lee Rose, Inc., D.Mass.1962, 211 F.Supp. 36, aff'd, 1st Cir. 1963, 317 F.2d 927; Middleton v. United Aircraft Corp., S.D.N.Y.1960, 204 F.Supp. 856) and may to some extent modify (e. g., 46 U.S.C.A. §§ 762, 763, 766), does not make the New York statute any the less a "[S]tate statute giving or regulating rights of action or remedies for death" and, hence, the Death on the High Seas Act leaves the New York wrongful death actions unaffected perforce of Section 7 of the Act. Cf. Larios v. Victory Carriers, Inc., supra, 316 F.2d at 65.

██ It has been supposed that Section 4 of the Act (46 U.S.C.A. § 764) might confine a plaintiff to a suit in admiralty based on French law, where, as in such a case as this, it must be assumed that a right of action exists against defendant under French law. Iafrate v. Cie. Generale Transatlantique, supra; Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V. supra. Cf. Noel v. United Aircraft Corp., D.Del. 1961, 191 F.Supp. 557. The plaintiff has not pleaded French law, as the cases appear to require; defendant has not asserted it; and it is not apparent that it will contribute anything more than the now familiar note that wrongful death actions do lie under the law of France. In any case, the survival or existence of a maritime right of action, saved alike by the laws of France and of New York, should not result in confining plaintiff to federal admiralty and depriving her of her historic right to sue at law in New York on the maritime tort by virtue indifferently of New York or French law. The Death on the High Seas Act was certainly not addressed to stripping away existing rights of action or to requiring resort to federal admiralty in place of existing civil actions at law in the state and federal courts.

██ If the conclusion in Devlin v. The Flying Tiger Lines, Inc., supra (and cases therein cited) and in Jennings v. Goodyear Aircraft Corporation, supra, is that the Death on the High Seas Act swept away all pre-existing state remedies and confined all wrongful death suitors to admiralty claims in the federal court,[2] and the cases may rather mean to

2. The Jones Act—very differently—made specific negligent conduct tortious (46 U.S.C.A. § 688, 45 U.S.C.A. § 51 et seq.), although it had not theretofore been actionable (The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760), explicitly provided a wrongful death action on the same new substantive principles, and, by reference to 45 U.S.C.A. § 59, provided for survival of *ante-mortem* claims. Its text has been held to be too tight-woven to permit state revival statutes to intrude the older civil claim for death from unseaworthiness, although the maritime law claim for non-fatal injury (in admiralty at least, cf. Fitzgerald v. United States Lines Co., 1963, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720) can coexist with a Jones Act negligence claim. Lindgren v. United States, 1930, 281 U.S. 38, 43–44, 47, 50 S.Ct. 207, 74 L.Ed. 686; Gillespie v. United States Steel Corporation, supra. Section 7 of the Death on the High Seas Act preserves the effect of state statutes, and it is essentially remedial and supplementary rather than substantive.

deal only with instances in which the suit lies only by virtue of the enactment of the Act, and in the Federal Court or nowhere, as where there is no other pertinent revival statute, then the conclusion appears, similarly, to deny meaning to Section 7 of the Act and has no affirmative support in the modest language of the Act, which simply grants an admiralty jurisdiction and regulates it.

It follows that the present diversity suit continues as a civil action in this Court on the second cause of action, that the removal was proper and that transfer to the admiralty side or remand would not be proper. But see Jennings v. Goodyear Aircraft Corporation, supra; Devlin v. The Flying Tiger Lines, Inc., supra, 220 F.Supp. at 928; Higa v. Transocean Airlines, supra. The suit is one "saved to suitors" by the ancient exception of 28 U.S.C.A. § 1333 (1); nothing in the Death on the High Seas Act has a strength of intimation that can abridge a traditional jurisdiction of the state courts; the Act makes plain its purposes, to remove from federal admiralty (where, almost alone, it existed) the anomaly presented by the unfortunate holding in The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 [as to which see The Tungus v. Skovgaard, supra, 358 U.S. at 599, 79 S.Ct. at 509 (dissent) and Igneri v. Cie. de Transports Oceaniques, 2d Cir. 1963, 323 F.2d 257, 259 fn. 1], to leave untouched all state law remedies linked to their wrongful death statutes, and to make federal admiralty available for foreign wrongful death claims, freeing such claims of any limitations on amount of recovery. It is well to recall that there is no proper national or maritime law of persons or of succession; such a revival statute as the Death on the High Seas Act essentially defines within the boundaries of the wrong determined under maritime law and the damage consequences established under that maritime law the extent to which a deceased victim's injury remains actionable and undischarged.

Accordingly, on defendant's motion it is

Ordered that defendant is entitled to summary judgment that plaintiff take nothing on the first cause of action and dismissing the first cause of action on the merits and the Clerk is directed to enter judgment accordingly when the final judgment is entered, and defendant's motion is in all other respects denied.