NOBLE v. MOORE–McCORMACK
LINES, Inc.

SCHLUTER v. MOORE–McCORMACK
LINES, Inc.

DECKER et al. v. MOORE–McCORMACK
LINES, Inc.

GORTON PEW FISHERIES COMPANY,
LIMITED v. MOORE–McCORMACK
LINES, Inc.

THE CORINTHIAN.

Nos. 50–55, 50–28, 50–9, 50–15, 50–16.

United States District Court
D. Massachusetts.

March 9, 1951.

See also, D.C., 91 F.Supp. 560.

Frederick W. Ryan, Lynn, Mass., for plaintiff Noble.

Harry Kisloff, Boston, Mass., for plaintiff Schluter.

John O. Parker and Ely, Bartlett, Thompson & Brown, all of Boston, Mass., for plaintiffs Decker et al.

Arthur J. Santry, Putnam, Bell, Dutch & Santry, Sumner H. Babcock, Joseph P. Rooney, and Paul V. Power, all of Boston, Mass., for plaintiff Gordon Pew Fisheries Co., Ltd.

Thomas H. Walsh, Boston, Mass., for Moore-McCormack Lines, Inc.

SWEENEY, Chief Judge.

All of the above actions, which grew out of a collision between the fishing vessel Corinthian and the S. S. Mormacfir, were consolidated for trial. The first three listed above are suits to recover under the Death on the High Seas statute, 46 U.S. C.A. § 761 et seq., and all of them also contain a second count for conscious suffering. To these second counts the respondent has filed exceptions. In the other two actions, the libellant seeks exoneration from or limitation of liability on its own behalf, and seeks recovery against the respondent for the loss of the fishing vessel Corinthian. In accordance with admiralty practice and confirming the stipulation made at the pretrials, this case has now been heard solely on the question of liability and will be referred to a commissioner for the assessment of damages.

### Findings of Fact

The fishing trawler Corinthian at 6:50 P. M. on the evening of September 19, 1949, was fishing about twelve miles off the coast of Halifax. It was dark and a thick fog had closed down to the water. Visibility was possible for about one hundred yards. Aboard the Corinthian there were eleven fishermen, six of whom were lost a few minutes later when the Corinthian was run down by the Mormacfir. Aboard the Corinthian was a life preserver for each man which had been placed in the bunk which the particular fisherman occupied. In addition, on deck in boxes on the side of the whaleback—which is on the bow—there were four additional life preservers. On deck also there were two ring buoys and the captain's life preserver in the pilot house. The Corinthian was about 112 feet in length and made of wood, and the Mormacfir was a steel vessel about 430 feet in length. The Corinthian had just completed a set and was hauling in her nets with her motors idling. The knockout whistle had sounded at 6:35, which was the signal to resume work hauling in the fish. The last man to come out of the forecastle heard a whistle from the Mormacfir and reported it to the captain. The captain had also heard it. The evidence does not disclose whether or not the other men heard it. The Corinthian had been blowing two blasts at intervals of a minute or two. She had not been sounding a whistle and a bell as provided in Article 9(i) of the International Rules for Navigation at Sea, 33 U.S.C.A. § 79 (i), and the respondent contends that the failure to blow such a combination fixes liability upon the Corinthian. The Corinthian on the other hand contends that, since she was underway and stopped, hauling in her nets and "having no way upon her", by blowing the two blasts she was correctly following Article 15 (b), 33 U.S.C.A. § 91 (b). If the Corinthian had "way upon her",

that is, was dragging her nets, blowing the two whistles would have been a variance from the rules, but since she had no way upon her just prior to the collision, the blowing of the two whistles at that moment was proper. The rules themselves seem to be ambiguous at least to the extent of defining the dividing limits between the situation under article 9 (i) and that under article 15 (b), but I find that the blowing of the two-blast signal, encouraged by a custom so to blow, was at least not such a clear cut violation of the rules that under the doctrine of The Pennsylvania v. Troop, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, would call for proof on the part of the Corinthian that her dubious violation could not and did not cause the collision. After the Corinthian heard the first blasts from the Mormacfir she continued blowing her two blasts until the Mormacfir again repeated the blowing of her whistle, but almost simultaneously with the second blast the Mormacfir emerged through the fog, was sighted, and struck the port quarter of the Corinthian, shearing off her stern and throwing her crew into the water. The Corinthian sank in a minute or two.

When the Mormacfir first heard the whistle of the Corinthian she was making 15 knots per hour through a heavy fog. The officer on the bridge ordered his engines into reverse but was unable to avoid hitting the Corinthian within the short distance which separated them because of the great speed of his vessel. At the moment of impact I find that the Mormacfir was traveling at not less than 6 knots per hour ahead with her engines in reverse. After the Mormacfir came to a stop at some distance beyond the point where the collision occurred, none of the crew members of the Corinthian or the boat itself was in sight. About an hour and five minutes after the collision the Mormacfir launched a motor boat to search for the survivors, and about an hour later they took five of the eleven men aboard and could not find the other six. The other six were drowned.

■ The respondent contends that the Corinthian was at fault in three respects:— (1) failure to have a lookout, (2) failure to blow the proper fog signals, and (3) failure to have life preservers "readily accessible" within the meaning of 46 U.S.C.A. § 526e. The owners of the Corinthian contend that the speed of the Mormacfir was so excessive under the circumstances as to make any faults of the Corinthian, if any, remote and not connected with the cause of the collision. The Mormacfir had a lookout on her bow but the Corinthian did not. I find that the failure of the Corinthian to maintain a lookout on her bow was not a serious fault, for they had no more reason to anticipate a collision in the bow than they did to anticipate a collision where it occurred—in the stern. All of the crew members were on deck and, Amirault and the captain having heard the first blast from the Mormacfir, they were alerted to a sense of impending danger. Then, too, since the Corinthian was not making headway, there was hardly the necessity for a lookout ahead. See We-Four Corporation v. The Whaler, D.C., 81 F.Supp. 849.

■ I have previously found and ruled that the conduct of the Corinthian in blowing two blasts instead of a blast and a bell was not such a clear cut violation of the rules as to compel the Corinthian to prove that such violation, if any, did not and could not have contributed to the collision. Since the Corinthian had no way upon her but was stopped, hauling in her nets, I cannot find and rule as a matter of law that she was not blowing the proper signal. Prior to the knockout signal being given, the Corinthian had been towing her fishing gear. However, after the knockout signal was given, she came to a complete stop and, this being so, the two-blast signal was proper and the Corinthian was not at fault in this respect.

■ Disposing of the respondent's third contention, I do not find that the Corinthian was at fault by reason of the location of the life preservers in the bunk of each seaman. The boat had provided each seaman with a life preserver, and they were as readily accessible from the bunks as they would have been from any other part of the boat at any given moment. I find nothing in the evidence to indicate that the members of the crew were compelled to keep the preservers in their bunks at all times.

While it may be argued that at the moment of collision the men were on deck and the life preservers should have been there with them, it does not necessarily follow that the failure of the crew to carry their preservers on deck was any fault on the part of the ship. The rules provide, 46 U.S.C.A. § 526e, that the life preservers shall be "so placed as to be readily accessible." I find that the preservers were readily accessible within the meaning of the statute. I cannot find that the ship's owner can be held to have anticipated that the Mormacfir would strike her at a point which prevented access below-deck. There was further no evidence to indicate that the supply of life preservers and ring buoys on the deck was exhausted. There being no unseaworthiness on the part of the Corinthian, her petition for limitation of liability should be allowed.

■■ The master of the Mormacfir had deviated from the regular European shipping lanes, well knowing that he was proceeding through water in which there was a great deal of fishing every day. With a speed of 15 knots per hour and visibility slightly in excess of 100 yards, I would consider that the Mormacfir was solely at fault with relation to this collision. Traveling at a speed of 15 knots per hour and loaded with a heavy cargo (steel for Norway), she could not be stopped within a third of a mile after the application of her "reverse engine." As was stated in Gertrude Parker, Inc., v. Abrams, 1 Cir., 178 F.2d 259, 264, "The specific rule of moderate speed in a fog, to say nothing of the general rule of prudent navigation, art. 29 of the International Rules, supra, 33 U.S.C.A. § 121, requires moderate speed in conditions of low visibility regardless of whether the 'visible distance' test of moderate speed is applicable or not." This is particularly true when we consider that the Mormacfir knew that she was traveling in an area where fishing vessels were always present.

■ The respondent's exceptions to the second counts in the first three actions, which were brought under the Death on the High Seas statute, are well taken. The Death on the High Seas statute gives no right of recovery for the conscious suffering of a person brought to his death by the wrongful act of another. In Section 762 it sets up a measure of damages which must be followed. There was no employer-employee relationship between the decedents and the respondent and, hence, there could be no right of action under the Jones Act, 46 U.S.C.A. § 688.

Conclusions of Law

From the foregoing I conclude and rule that the collision between the Corinthian and the Mormacfir was due solely to the excessive speed and the resulting unmaneuverability of the Mormacfir under such excessive speed.

From the foregoing I conclude and rule that the Corinthian was not at fault in any respect.

From the foregoing I conclude and rule that the petition for limitation of liability filed by the owners of the Corinthian should be, and is, allowed.

The usual order of reference to a commissioner for the ascertainent of damages for all parties may be made.