The Libels in personam of Betty Marie WILLIAMS, as Administratrix of the Estate of Troy Ford Williams, Deceased; of Kenneth Philhower, as Administrator of the Estate of Harry M. Shaffer, Deceased; of Adele Giurastante, as Administratrix of the Estate of Domenic Vincent Giurastante, Deceased; of Connie Wolford, as Administratrix of the Estate of Larry Wolford, Deceased; of Edna C. Kovarick, as Administratrix of the Estate of Wilbur L. Kovarick, Deceased; of Janice Lynne Jones, as Administratrix of the Estate of Leland H. Jones, Deceased, Libellants,

v.

MORAN, PROCTOR, MUESER & RUTLEDGE, partnership consisting of Carlton S. Proctor, William H. Mueser, Philip C. Rutledge, Paul M. Wentworth and Robert C. Johnston, individually and as a joint venturer with Anderson-Nichols & Company, and against each of said partners individually and as a joint venturer with Anderson-Nichols & Company; Anderson-Nichols & Company, a partnership consisting of Evan Ross Anderson, Allen N. Bennett, Eugene S. Taliaferro, Merell T. Kinne, William F. Dewey, Guerard H. Howkins, Charles Wm. Johnson, Fred F. Ladd and Robert L. Williams, individually and as a joint venturer with Moran, Proctor, Mueser & Rutledge, and against each of said partners, individually and as a joint venturer, with Moran, Proctor, Mueser & Rutledge; and Anderson-Nichols & Co., Inc.; J. Rich Steers, Inc., individually and as a joint venturer, and Morrison Knudsen Co., Inc., individually and as a joint venturer, Respondents.

United States District Court
S. D. New York.
April 30, 1962.

George J. Engelman, New York City, and Harry Kisloff, Boston, Mass., for libelants.

Whitman, Ransom & Coulson, New York City, for respondents Moran, Proctor, Mueser & Rutledge, and others; Forbes D. Shaw, Paul M. O'Connor, Jr., New York City, of counsel.

Nevius, Jarvis & Pilz, New York City, for respondents J. Rich Steers, Inc. and Morrison Knudsen Co., Inc.

Frank G. Sterritte, New York City, for respondent J. Rich Steers, Inc.

Macklin, Speer, Hanan & McKernan, Charles J. Carroll, Jr., New York City, of counsel, for respondents.

SUGARMAN, District Judge.

On December 28, 1961, six libelants, each as the representative of his or her intestate, filed a libel seeking damages for the conscious pain and suffering and wrongful death of each said decedent. Each intestate was a member of the United States Air Force, stationed on Texas Tower No. 4, who met his death when that Tower collapsed into the sea on January 15, 1961.

The libel pleads thirty causes of action, five by each libelant. The respondents severally and jointly charged with wrongdoing, as hereinafter set forth, are:

Moran, Proctor, Mueser & Rutledge (hereinafter Moran), individually and as a joint venturer with Moran's partners, Anderson-Nichols & Company (hereinafter Anderson partnership) and Anderson partnership's partners;

Carlton S. Proctor, William H. Mueser, Philip C. Rutledge, Paul M. Wentworth and Robert C. Johnston (the partners constituting Moran), individually and as joint venturers with each other, Moran, Anderson partnership and Anderson partnership's partners;

Anderson partnership, individually and as a joint venturer with Anderson partnership's partners, Moran and Moran's partners;

Evan Ross Anderson, Allen N. Bennett, Eugene S. Taliaferro, Merell T. Kinne, William F. Dewey, Guerard H. Howkins, Charles Wm. Johnson, Fred F. Ladd and Robert L. Williams (the partners constituting Anderson partnership), individually and as joint venturers with each other, Anderson partnership, Moran and Moran's partners;

J. Rich Steers, Inc. (hereinafter Steers) and Morrison Knudsen Co.

Inc. (hereinafter Morrison) individually and as joint venturers;

Anderson-Nichols & Co., Inc. (hereinafter Anderson corporation), as successor to Anderson partnership and its partners.

Except for the allegations of the several appointments of the libelants, each as the representative of his or her intestate, the survivors of each intestate for whose benefit the suit is brought and the several varying allegations of damages, the causes of action are substantially identical. Therefore, each cause of action of each libelant will be collectively treated herein with the similar causes of action of the other libelants.

Each cause of action is predicated upon the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768 and/or § 130 of the Decedent Estate Law of the State of New York.

Although each cause of action sets forth in detail the alleged acts or omissions constituting the claimed negligence and breach of warranty, only the basic facts will be recited herein.

## THE FIRST CAUSE OF ACTION AGAINST MORAN, ITS PARTNERS, ANDERSON PARTNERSHIP, ITS PARTNERS AND ANDERSON CORPORATION

It is alleged that in June of 1954 Moran and Anderson partnership, individually and as joint venturers, were employed by the United States Navy to make a study of the feasibility of erecting a radar tower (Texas Tower No. 4) in, on and over the high seas at a point approximately 84 miles southeast of Coney Island, New York.

Moran and Anderson partnership, having certified the feasibility thereof, they were individually and as joint venturers, in December of 1954 employed by the United States Navy to design the tower and to supervise its construction, which they did.

In November of 1957 the completed Tower was delivered to the United States Navy.

In 1960 or 1961 Anderson corporation acquired the assets of Anderson partnership and assumed all the liabilities of the partnership and of each of its partners.

On January 15, 1961 the Tower collapsed into the sea, causing the alleged conscious pain and suffering and death of each libelant's intestate.

Accordingly, the first cause of action against the respondents therein named, as aforesaid, is for the alleged negligence and breach of warranty of said respondents up to November 1957, when they delivered the Texas Tower to the United States Navy.

## THE SECOND CAUSE OF ACTION AGAINST MORAN AND ITS PARTNERS

After substantially realleging the facts pleaded in the first cause of action, the libel alleges that between November 1957, when it was delivered to the Navy, and January 15, 1961, when it crashed into the sea, Texas Tower No. 4 developed structural defects and weaknesses so that in June of 1959 Moran, after completing certain repairs to the Tower, certified to the Navy that it was restored to its original strength.

In April of 1960 Moran recommended to the Navy that certain additions be made to the Tower to make it more stable.

On August 10, 1960, after the completion of the recommended additions, Moran certified to the Navy that the Tower had been restored to its original strength, which it is alleged was not true.

Finally, in September of 1960, Moran refused to then evaluate the strength of the Tower but failed to recommend to the Navy that it be abandoned, after which it collapsed on January 15, 1961, as aforesaid.

Accordingly, the second cause of action against Moran and its partners is for the alleged negligence and breach of warranty of said respondents from November 1957, when the Tower was delivered to the Navy, until January 15, 1961, when it collapsed.

## THE THIRD CAUSE OF ACTION AGAINST STEERS AND MORRISON INDIVIDUALLY AND AS JOINT VENTURERS

After substantially realleging the facts pleaded in the first cause of action, the libel alleges that Steers and Morrison were construction and structural engineers who jointly and severally were employed in November 1955 by the United States Navy to construct Texas Tower No. 4, which they did, and which they turned over to the Navy as aforesaid in November of 1957, when they certified that the Tower was structurally sound and equal to its original design.

Thus, the third cause of action against Steers and Morrison is for alleged negligence of said respondents up to November 1957, when they delivered the Texas Tower to the United States Navy. No breach of warranty appears to be pleaded in this cause of action.

## THE FOURTH CAUSE OF ACTION AGAINST STEERS

After substantially realleging the facts pleaded in the first and third causes of action, the libel alleges that between November 1957, when the Tower was delivered to the Navy, and January 15, 1961, when it collapsed, the Navy employed Steers as a general contractor to examine the Tower, make recommendations to the Navy and to the architectural and design engineers for its repair and to repair it, which Steers did by recommending and installing certain additions thereto.

The fourth cause of action against Steers, therefore, is for alleged negligence and breach of warranty of Steers between November 1957 and January 15, 1961.

## THE FIFTH CAUSE OF ACTION AGAINST ALL RESPONDENTS

This cause of action is for the alleged mental anguish, bodily injury and conscious pain and suffering of each intestate before his death.

As earlier observed, each cause of action is predicated on the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768 and/or § 130 of the Decedent Estate Law of the State of New York.

Libelants, in the memorandum submitted in opposition to the respondents' exceptions herein, confess that they misspoke themselves as to the state statute upon which they predicate their fifth cause of action. They meant to allege § 119 of the Decedent Estate Law of New York. The fifth cause of action in each instance is therefore amended accordingly and the respondents' exceptions to the fifth cause of action will be treated as addressing themselves to § 119 (instead of § 130) of the Decedent Estate Law of New York and to the Death on the High Seas by Wrongful Act statute.

\*　　\*　　\*

Moran and its partners now bring on for argument (Motion # 4 of March 13, 1962) exceptions to the libel as follows:

(a) That the claims for wrongful death asserted against it in the first and second causes of action are insufficient insofar as they are predicated upon § 130 of the Decedent Estate Law of the State of New York;

(b) That the claim for conscious pain and suffering as alleged in the fifth cause of action is insufficient under the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768 [and, although not mentioned by movant, § 119 of the Decedent Estate Law of the State of New York];

(c) That the claims for wrongful death asserted against it in the first and second causes of action are insufficient insofar as they are predicated upon the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768, because the alleged negligence antedates by more than two years the beginning of the suit.

\*　　\*　　\*

Steers now brings on for argument (Motion # 5 of March 13, 1962) exceptions to the libel as follows:

(a) That the claims for wrongful death asserted against it in the third,

fourth and fifth [sic, the fifth cause of action is for conscious pain and suffering] causes of action are insufficient insofar as they are predicated upon § 130 of the Decedent Estate Law of the State of New York;

(b) That the claims for wrongful death asserted against it in the third and fourth causes of action are insufficient insofar as they are predicated upon the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768, because the alleged negligence antedates by more than two years the beginning of the suit;

(c) That the claim for conscious pain and suffering as alleged in the fifth cause of action is insufficient under the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768, and § 130 [for which is substituted § 119 for the reason above ascribed] of the Decedent Estate Law of the State of New York.

\* \* \*

Morrison now brings on for argument (Motion # 6 of March 13, 1962) exceptions to the libel as follows:

(a) That the claims for wrongful death asserted against it in the third and fifth [sic, the fifth cause of action is for conscious pain and suffering] causes of action are insufficient insofar as they are predicated upon § 130 of the Decedent Estate Law of the State of New York;

(b) That the claim for wrongful death asserted against it in the third cause of action is insufficient insofar as it is predicated upon the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768, because the alleged negligence antedates by more than two years the beginning of the suit;

(c) That the claim for conscious pain and suffering as alleged in the fifth cause of action is insufficient under the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761 to 768 and § 130 [for which is substituted § 119 for the reason above ascribed] of the Decedent Estate Law of the State of New York.

\* \* \*

Thus far Anderson partnership and its partners and Anderson corporation have not brought on exceptions to this libel.

\* \* \*

There are, therefore, presented for resolution three questions:

1. Do these libelants each have a cause of action for the wrongful death of his or her intestate under § 130 of the Decedent Estate Law of the State of New York upon the facts alleged;

2. Do these libelants each have a cause of action upon the facts alleged for mental anguish and conscious pain and suffering of their respective decedents under the Death on the High Seas by Wrongful Act statute, or under § 119 of the Decedent Estate Law of the State of New York; and

3. The libel having been filed on December 28, 1961, are the respondents answerable to the libelants under the Death on the High Seas by Wrongful Act statute for negligent acts or omissions or for breach of warranties alleged to have occurred prior to December 28, 1959.

\* \* \*

■■ In resolving the respondents' exceptions, we must accept as true the fact allegations of the libel. Castillo et al. v. Argonaut Trading Agency, Inc. et al., 156 F.Supp. 398 (S.D.N.Y.1957). This would, of course, include the libelants' allegation that Texas Tower No. 4 "was in, on and over the high seas, approximately 84 miles Southeast of Coney Island, New York". I take judicial notice that a marine league is 3 nautical miles and the equivalent of 3.45 statute miles and, therefore, that Texas Tower No. 4 collapsed at a point outside a marine league from the shore of any state. 46 U.S.C.A. § 761.

I.

■ The exceptions of Moran and its partners to the " 'First' and 'Second' alleged causes of action" and of Steers to the "Third, Fourth and Fifth [sic] al-

leged causes of action" and of Morrison to the "Third and Fifth [sic] alleged causes of action", that the claims as therein set forth are insufficient to constitute causes of action against said respondents, insofar as they predicate libelants' claims for wrongful death of their decedents upon § 130 of the Decedent Estate Law of the State of New York, are sustained. Middleton v. Luckenbach S. S. Co., Inc., 70 F.2d 326 (2d Cir. 1934); D'Aleman v. Pan American World Airways, Inc., 259 F.2d 493, concurring opinion at 496 (2d Cir. 1958); Echavarria v. Atlantic & Caribbean Steam Nav. Co., 10 F.Supp. 677 (E.D. N.Y.1935); Wilson v. Transocean Airlines et al., 121 F.Supp. 85 (N.D.Cal. 1954); First National Bank in Greenwich et al., etc. v. National Airlines, Incorporated, 171 F.Supp. 528 (S.D.N.Y. 1958), affirmed 288 F.2d 621 (2d Cir. 1961); cf. The Tungus et al. v. Skovgaard et al., 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524, concurring opinion at 600, at page 510 of 79 S.Ct. (1959).

While I admire the caution of libelants' proctors in predicating the wrongful death causes of action upon § 130 of the Decedent Estate Law of the State of New York as "merely a protective allegation", I am not impressed by the argument that they do so because there is "no reported case applying the Federal Act to a structure such as Texas Tower No. 4".

As Judge Moore observed in D'Aleman v. Pan American World Airways, supra:

"The law would indeed be static if a passenger on a ship were protected by the Act and another passenger in the identical location three thousand feet above in a plane were not. Nor should the plane have to crash into the sea to bring the death within the Act any more than a ship should have to sink as a prerequisite."

Judge Waterman in his concurring opinion said:

"that the extension of the rights of action in admiralty [under the Death on the High Seas by Wrongful Act statute] therein granted so as to include rights of action for death resulting from events in the air space above the high seas is not an unconstitutional interpretation or an improper extension of that proper grant of jurisdiction."

In my view what was said in the D'Aleman case applies with equal force to a Texas Tower stationed 84 miles at sea. The libelants' argument that they "should be permitted to plead the Federal and State Death Acts and let the Court apply the Act on the trial" because both Acts' "liability is predicated on 'wrongful act, neglect or default' and only relatives and next of kin may recover" and because "both Acts restrict recovery to pecuniary loss" ignores that, even if the Death on the High Seas by Wrongful Act statute were inapplicable, the state wrongful death act would not thereby be automatically brought into play because the facts alleged do not bring an event occurring 84 miles at sea within the local aspect which has been accepted as a basis for allowing a recovery for wrongful death under the state wrongful death act. Western Fuel Company v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921), where it was said at page 242, 42 S.Ct. at page 90:

"As the logical result of prior decisions we think it follows that, where death upon such waters results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given. The subject is maritime and *local in character* and the specified modification of or supplement to the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of

that law in its international and interstate relations." (Emphasis supplied.)

A death caused by wrongful act 84 miles out in the Atlantic Ocean cannot be local in character. The claims for wrongful death based upon § 130 of the Decedent Estate Law of New York are insufficient.

## II.

The exceptions of Moran and its partners, of Steers and of Morrison that the " 'Fifth' alleged causes of action", which assert claims for damages for mental anguish, bodily injury and conscious pain and suffering under the Death on the High Seas by Wrongful Act statute, 46 U.S.C.A. §§ 761–768 and/or under § 119 of the Decedent Estate Law of New York are insufficient to constitute causes of action against said respondents, are sustained as to the Death on the High Seas by Wrongful Act statute and overruled as to § 119 of the Decedent Estate Law of New York.

*(a) Concerning the Death on the High Seas by Wrongful Act Statute*

■   The libelants state in their memorandum in opposition to these exceptions that:

"Section 765 of the Death on the High Seas Act * * * provides that the personal representative of one who has negligently suffered personal injuries on the high seas and died thereby, with suit pending for such injuries, may be substituted and proceed with the suit; but the statute does not provide for the survival of the bare cause of action as does Section 59 of F.E.L.A. * * which is part of the Jones Act. Thus, if the [Death on the High Seas by Wrongful] Act [statute] is to be strictly adhered to, the widow and children of one who has been completely incapacitated and languished before death with detriment to his estate, cannot recover for such loss unless suit was brought prior to death. We do not think that Congress intended any such injustice."

The Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688, became law on June 5, 1920. The Death on the High Seas by Wrongful Act statute, 41 Stat. 537, 46 U.S.C.A. §§ 761–768, became law on March 30, 1920. They were both passed by the same Congress.

In making, by the Jones Act, "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees" applicable to seamen, Congress must have known that it thereby included 45 U.S. C.A. § 59, which was part of the Federal Employers' Liability Act, a statute "conferring or regulating the right of action for death in the case of railway employees", 46 U.S.C.A. § 688. Section 59 of Title 45 provides that *"any right of action* given by this chapter to a person suffering injury *shall survive* to his or her personal representative, * * * " (Emphasis supplied.) On the other hand, the Death on the High Seas by Wrongful Act statute, § 762 of Title 46, provides that "the recovery in such suit shall be a fair and just compensation for the *pecuniary loss* sustained by the persons for whose benefit the suit is brought * * * " (Emphasis supplied.)

Judge Caffrey of the United States District Court for the District of Massachusetts in an admiralty suit arising out of the same catastrophe, i. e., the collapse of Texas Tower No. 4 on January 15, 1961, when confronted with an exception by the respondent Anderson corporation to a claim by the libelant in that suit for damages for conscious pain and suffering under the Death on the High Seas by Wrongful Act statute, sustained that exception in the following language:

"The Death on the High Seas Act does not create or confer upon the statutory beneficiaries of a decedent a cause of action intended to survive the decedent for the benefit of his statutory beneficiaries, and in this respect it contrasts sharply with the provisions of the Jones Act, 46 U.S. C.A. 688, to the extent that the Jones Act incorporates by reference Section 59 of the Federal Employers'

Liability Act, 45 U.S.C.A. 59, which does provide for survival of the count for conscious suffering.

"Had Congress intended to create a cause of action for conscious suffering which would survive to the representatives of the decedent or the group of beneficiaries denominated in Section 761, it indicated in the Jones Act that it was well aware of language apt to produce this result. Absent such language in the Death on the High Seas Act, no cause of action for conscious suffering is created thereby. Noble v. Moore-McCormack Lines, 96 F. Supp. 369, 372 (D.Mass.1951); Decker v. Moore-McCormack Lines, 91 F.Supp. 560, 561 (D.Mass.1950); Gilmore & Black, The Law of Admiralty, p. 308."

Brown v. Anderson-Nichols & Co., Inc., D.C., 203 F.Supp. 489. I believe that Judge Caffrey's language above quoted fully disposes of the libelants' contention herein that Congress did not intend any such distinction.

The claims for the conscious pain and suffering of libelants' decedents, predicated upon the Death on the High Seas by Wrongful Act statute, are insufficient.

*(b) Concerning Section 119 of the Decedent Estate Law of the State of New York*

In considering this phase certain facts must be borne in mind:

First, Anderson partnership and its partners and Anderson corporation are as aforesaid not involved in the determination of these exceptions brought on by the remaining respondents;

Second, it must be, as aforesaid, accepted as true that as alleged in the libel, Moran and its partners (fourth article of the libel) are "engaged in the practice of architectural and structural engineering and maintains offices for the practice of its profession in the Borough of Manhattan, City of New York, within the jurisdiction of this court"; Steers (twenty-second article of the libel) "is a New York Corporation, engaged in construction and structural engineering and maintains an office and is engaged in business in the Borough of Manhattan, City of New York, within the jurisdiction of this Court"; and Morrison (twenty-third article of the libel) "is a foreign corporation, engaged in construction and structural engineering and maintains an office and is engaged in business in the Borough of Manhattan, City of New York, within the jurisdiction of this court".

As to Moran and its partners and Steers, both New York entities, Section 119 of the Decedent Estate Law of New York is applicable under United States v. The S. S. Washington, 172 F.Supp. 905 (E.D.Va.1959) [affirmed, upon the opinion of the district court, sub nom. United States v. Texas Company, 272 F.2d 711 (4th Cir. 1959)] where it was said in the district court opinion, 172 F.Supp. at page 908, that

"As The Texas Company is a Delaware corporation and the catastrophe occurred beyond the territorial waters of a State, in the Atlantic some fifty miles off the Virginia shore, the survival statute of Delaware, 1935 Code, sec. 4637, as amended, may be called in to rescue the action. (Cases cited.)

"Preemption does not bar the operation of the State law. No Act of Congress touches a non-seaman's personal injury suit arising in the oceans beyond a State's jurisdiction. Nor can an opposite implication be found in the Death on the High Seas Act. Its provision of availability when death intervenes during the pendency of a personal injury action, does not deny, but rather avows, the legitimacy of a cause of action for personal tort at sea."

With respect to Morrison, a foreign corporation with substantial contacts in New York, any doubt as to the applicability of § 119 of the New York Decedent Estate Law under United States v. The S. S. Washington, supra, is dispelled by Petition of Gulf Oil Corporation, 172 F. Supp. 911 (S.D.N.Y.1959), where Judge

Palmieri in allowing an award for pain and suffering arising out of a wrongful act on the high seas in a limitation proceeding held at page 919 "that the question of survival be determined by the law of the forum".

I can discern no reason for distinguishing United States v. The S. S. Washington and Petition of Gulf Oil Corporation from the case at bar merely because Texas Tower No. 4 was not owned by Moran and its partners, Steers or Morrison and was a stationary object in the sea rather than a moving vessel.

■ It is to be noted that in applying a state wrongful death act to a situation such as here presented, the federal courts will apply the state statute of limitations. Western Fuel Company v. Garcia, supra. However, no problem is here presented on that score because § 49 of the New York Civil Practice Act prescribes a three year statute of limitations for an action to recover damages for conscious pain and suffering, which commences to run at the time of injury. Stutz v. Guardian Cab Corporation, 273 App.Div. 4, 74 N.Y.S.2d 818 (1st Dept.1947). In the case at bar, the injuries occurred when the Tower collapsed on January 15, 1961 and the action was commenced on December 28, 1961.

The claims for the conscious pain and suffering of libelants' decedents, predicated upon § 119 of the Decedent Estate Law of New York, are sufficient.

### III.

■ The exceptions of Moran and its partners to the " 'First' and 'Second' alleged causes of action" and of Steers to the "Third * * * and Fourth alleged causes of action" and of Morrison to the "Third alleged causes [sic] of action" that the claims as therein set forth are insufficient to constitute causes of action against said respondents under the Death on the High Seas by Wrongful Act statute because, as variously stated by these respondents, the suit was not begun within two years from the date of the wrongful act, neglect or default, or because libelants are basing their claims in whole or in part upon wrongful acts antedating by more than two years the beginnning of the suit, are overruled.

The very title of the Death on the High Seas by Wrongful Act statute and the reading together of Sections 761 and 763 of Title 46 U.S.C.A., convince me that there can be no *actionable* wrongful act, neglect or default until a death occurs. The statute obviously was never intended to deal with a non-actionable wrongful act, neglect or default. It could only deal with an actionable wrongful act, neglect or default of which death is an indispensable ingredient.

It is utter sophistry to argue, as do the respondents, that Congress meant to say that the perpetrator of a wrongful act was to be immune from responsibility for a death occasioned by his fault merely because of the happenstance that that fault remained undiscovered for two years. That is quite different from saying, as I believe Congress did, that one entitled to requital for a wrongful death who knowingly fails to act upon his rights for two years after the death thus abjures his claim.

I am in complete accord with what Judge Caffrey said on the same subject in Brown v. Anderson-Nichols & Co., Inc., supra:

"Respondent argues that the two year period of limitation begins to run from the date of the negligent act or omission, without regard to the date when this act or omission impinged upon the body of the libellant's intestate so as to inflict personal injury or death. The libel herein alleges that the negligent act by the respondent occurred in 1957 and, therefore, respondent argues, since more than two years elapsed from 1957 to the time of the filing of the libel the libel is barred.

"I do not read Section 763 as literally and baldly as respondent contends it should be read. I believe that Congress intended by enacting Section 763 to impose a two year limitation upon a cause of action,

and it is elementary that unless and until the negligent act impinges upon the person of a potential plaintiff there is, in fact, no cause of action in existence. Vancouver SS Company v. Rice, 288 U.S. 445, 448, 53 S.Ct. 420, 77 L.Ed. 885, 'The substance and consummation of the occurrence which resulted in intestate's death and *so gave rise to respondent's cause of action * *.'* (Emphasis added.)

"Legislation should be read to give it a meaningful interpretation if its language is susceptible of such a construction. In enacting Section 763 Congress should not be deemed to have attempted to impose a limitation on a 'non-cause of action,' or upon an inchoate, partial or embryonic cause of action, but, on the contrary, should be deemed to have imposed a limitation upon a completed cause of action. On the facts of this case no cause of action was in existence in 1957, nor unless and until the alleged negligence impinged upon the person of libellant's intestate."

I have been caused to pause by what was said by this circuit in Dincher v. Marlin Firearms Co., 198 F.2d 821 (2d Cir. 1952), a case relied upon by respondents. In that case the Second Circuit was called upon to construe a Connecticut statute which had originally provided a limitation period "from the date of the injury or neglect complained of" but which was changed to provide that the statute would commence running "from the date of the act or omission complained of". There the majority held that the change in the statute was significant and the act complained of having occurred on June 6, 1946 a complaint filed in the district court of Connecticut on April 19, 1951 in a diversity suit, where the state law had to be followed, was time barred by the statute. The circuit court was there construing an amended state statute upon which the state court had not as yet expressed an

opinion. Judge Frank wrote a vigorous dissent, urging that

"No one can intelligently assert that the defendant's conduct here invaded any interest of the plaintiff before July 3, 1950 [the date when the malfunctioning rifle came into the plaintiff's hands]. Previously, plaintiff was not in the 'zone of danger' created by defendant's negligence; until he received the rifle, plaintiff did not enter that zone. In short, *it takes two to make a tort."*

Any doubt which the Dincher case may have created was completely dispelled by Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir. 1960), which dealt with the same Connecticut statute of limitations. Here the unanimous court pointed out that since the Dincher decision the Connecticut courts had had an opportunity to express their interpretation of the new Connecticut statute and that the most recent interpretation by the Connecticut court "would seem to vitiate the force of cases like Kennedy v. Johns-Manville Sales Corp., 1948, 135 Conn. 176, 62 A.2d 771;[3] ". Footnote 3 of the Ricciuti opinion states:

"It was the rule of the Kennedy case which formed the basis for the decision in Dincher v. Marlin Firearms Co. * * * "

Nor do the other cases upon which respondents rely support their argument. In Dunn et al. v. Wheeler Shipbuilding Corporation et al., 86 F.Supp. 659 (E.D. N.Y.1949), it is clear that the libelants' decedents lost their lives on January 9, 1947. Judge Byers held that one libel filed on January 7, 1949 was "two days prior to the expiration of the two year statutory period, namely, January 9, 1949" and that "the last day to file the [other] libel * * * was January 9, 1949, and the filing two days later was not timely * * * " It is obvious that the district court in this case reckoned the statute of limitations from the date of death.

In Batkiewicz v. Seas Shipping Co., Inc., 54 F.Supp. 789 (S.D.N.Y.1944), also

relied upon by respondents, Judge Conger, after pointing out "that the wrongful death occurred on or about June 30, 1941" held that the libel was timely filed on June 28, 1943, stating that "the libel was filed within the two-year period; * * *" Here again the district judge reckoned the statute of limitations from the date of death.

In Petition of United States et al., 92 F.Supp. 495 (S.D.N.Y.1950), upon which respondents also rely, Judge Goddard in construing 46 U.S.C.A. § 763 held:

"Section 763 of this Act requires that suit be begun within two years from the date of the wrongful act * * *. Since Gussie Dictor's claim was not filed until February 28, 1944, which is more than two years after the date [January 14, 1942] of the alleged wrongful act, the cause of action was extinguished." (Date in brackets in the reported opinion.)

Reference to the Petition of United States et al. for exoneration from and limitation of liability on file in this court indicates that Gussie Dictor's decedent was on board the S.S. FRIAR ROCK, which was struck by a torpedo on January 14, 1942, the date contained in the brackets in the above quotation from the opinion. It is obvious, therefore, that Judge Goddard considered the date of death as the date of the alleged wrongful act for the purpose of reckoning the two year statute.

Against the respondents' contention stands The Vulcania, 32 F.Supp. 815 (S.D.N.Y.1940), wherein Judge Hulbert wrote:

"The statutory period for the commencement of a suit under the statute is two years from the *date of death* (Sec. 763) [of Title 46, U.S.C.A.] unless its maintenance is based upon a right of action granted by the law of a foreign state where the period of limitation is less than two years. The Vestris, D.C.N.Y., 53 F.2d 847." (Emphasis supplied.)

The libel filed on December 28, 1961, addressing itself to alleged wrongful acts of respondents resulting in the deaths of libelants' decedents on January 15, 1961, is sufficient as being timely filed under the Death on the High Seas by Wrongful Act statute.

\* \* \*

■ In addition to the instant libel, wherein six libelants sue nineteen respondents, I am informed that a second libel by eight libelants against nineteen respondents, a third libel by five libelants against five respondents and a fourth libel by one libelant against three respondents, all arising out of the Texas Tower # 4 collapse, have been filed in this court. Exceptions similar to those treated herein have been noticed or are contemplated in the other three suits. I am of the opinion that the order to be entered hereon "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of the litigation". 28 U.S.C.A. § 1292(b). It seems to me that before the district court embarks upon the time consuming exercise of trying all these cases predicated upon identical facts, the Court of Appeals should *in limine* pass upon the correctness of the instant ruling on respondents' exceptions.

Settle an order on notice consistent herewith and containing the district judge's statement contemplated by 28 U.S.C.A. § 1292(b) and that respondents may have twenty days from the date of the order to serve and file their answers to the libel unless an interlocutory appeal is sought by either party, in which event respondents shall have twenty days to answer from the date that such appeal is denied or, if it is granted, from the date of the decision by the Court of Appeals thereon.