The amended Libels in personam of Alfreda ABBOTT, as Administratrix of the Estate of David W. Abbott, Deceased; et al., Libellants,

v.

The UNITED STATES of America, et al., Respondents.

The Libels in personam of Elizabeth CUDNIK, as Administratrix of the Estate of Chester John Cudnik, Deceased; et al., Libellants,

v.

The UNITED STATES of America et al., Respondents.

The Libel in personam of Mary A. BROWN, as Administratrix of the Estate of Vincent Brown, Deceased; etc., Libellant,

v.

MORAN, PROCTOR, MUESER & RUTLEDGE, et al., Respondents.

United States District Court
S. D. New York.
June 8, 1962.

George J. Engelman, New York City and Harry Kisloff, Boston, Mass., for libellant Abbott et al.

Whitman, Ransom & Coulson, New York City, Forbes D. Shaw and Paul M. O'Connor, Jr., New York City, of counsel, for respondent Moran, Mueser & Rutledge et al.

Nevius, Jarvis & Pilz, New York City, Macklin, Speer, Hanan & McKernan and Charles J. Carroll, Jr., New York City, of counsel, for respondents J. Rich Steers, Inc. and Morrison Knudsen Co., Inc.

Kuzmier, McKeon, Schmitt & Carberry, New York City, Kreindler & Kreindler and Paul S. Edelman, New York City, of counsel, for libellant Cudnik et al.

Frank J. Amabile, New York City, and Philip A. Tracy, Boston, Mass., for libellant Mary A. Brown.

METZNER, District Judge.

In these three libels, fourteen different libellants seek to recover damages for the wrongful death, bodily injury, and conscious pain and suffering of their decedents, who were drowned on January 15, 1961, when Texas Tower No. 4, an offshore radar station, located about eighty-four miles southeast of Coney Island, collapsed during a storm and fell into the sea. Two of the libels were filed in July 1961 and the third in December 1961. Respondents Moran, Proctor, Mueser & Rutledge (hereinafter referred to as Moran), a partnership, J. Rich Steers, Inc., and Morrison Knudsen Co., Inc. have brought on certain exceptions to the libels.[1]

The fourth claim of the Abbott libel, against Moran and the members of the partnership,[2] alleges that they are architectural and structural engineers; that on or about June 1954 the United States employed these respondents to study the feasibility of erecting an offshore radar tower in the Atlantic Ocean; that the respondents reported that it would be feasible to erect such a tower at the site ultimately occupied by Texas Tower No. 4; and that respondents were then employed by the United States to prepare designs, plans, and specifications for the design, construction, installation, and erection of the tower. The libel further states that the tower was designed, constructed, installed, and repaired in accordance with the designs of these respondents and under their supervision. Paragraph 32 details acts of negligence allegedly committed by respondents from the time they undertook a feasibility study until November 1957, when the tower was delivered to the Navy, which acts of negligence are asserted to have caused the deaths of the decedents.

The fifth claim of the Abbott libel against Moran and its partners[3] charges that from November 1957 until January 15, 1961 the tower developed structural defects and weaknesses, and some of its parts became defective and lost. It alleges that the United States employed Moran to recommend and to make designs for the repair, improvement, and structural integrity of the tower; that Moran made such recommendations and prepared such plans and supervised the repair of the tower. It further alleges that in June 1959 Moran certified to the United States that the tower had been returned to its original design strength, which it had not; that the structural integrity of the tower worsened so that in April 1960 Moran recommended, and later made plans for, further repairs, which were carried out; and that on or

1. The three libels will be referred to hereinafter as the Abbott libel, the Cudnik libel, and the Brown libel, after the first libellants named therein. The United States is named in the first three claims of the Cudnik and Abbott libels, but has not appeared on these motions. Similarly, Anderson-Nichols is also named in the Cudnik and Abbott libels, but is not before the court on these motions.

2. The fourth claim of the Cudnik libel is identical, except that it does not name the partners. The first claim of the Brown libel is identical, except that it names only Moran.

3. The fifth claim of the Cudnik libel and the second claims of the Brown libel are identical, except that they name only Moran.

about August 10, 1960 Moran certified that the tower had been restored to its original design strength, which it had not. There are further detailed allegations of negligence, and that this negligence caused the deaths of decedents.

The sixth claim of the Abbott libel is against J. Rich Steers and Morrison Knudsen Co., who are construction and structural engineers.[4] It is alleged that these respondents were employed in November 1955 to construct the tower, that they did so, and turned it over to the Navy in November 1957. The libel asserts that they were negligent, in various ways that are detailed, and that such negligence caused the deaths of decedents.

The claim of each libellant for wrongful death is joined with a claim for conscious pain and suffering. The claims for wrongful death are asserted under the Death on the High Seas by Wrongful Act Statute (hereinafter DHSA), 46 U.S.C.A. §§ 761–68.[5] The claims for bodily injury and conscious pain and suffering are "based on the General Maritime Law" and are claimed to survive to libellants under the DHSA "and other applicable law."

■ For purposes of these motions, the allegations of fact contained in the libel are accepted as true. Castillo v. Argonaut Trading Agency, Inc., 156 F. Supp. 398 (S.D.N.Y.1957).

■■ The first set of exceptions to the libels is based on the ground that the claims for wrongful death are barred by the statute of limitations. Moran excepts on the ground that the claims against it are based in whole or in part on alleged wrongful acts occurring more than two years before the institution of suit, and thus are time-barred. Steers and Knudsen interpose similar exceptions, on the ground that the claims against them are based solely on wrongful acts occurring before November 1957, and thus clearly more than two years prior to the institution of suit.

These exceptions are overruled.

The statute of limitations of the DH SA, 46 U.S.C.A. § 763, provides that "suit shall be begun within two years from the date of such wrongful act, neglect, or default * * *." Respondents argue that the language of this section, which differs from that usually found in limitations statutes, compels the conclusion that the statute runs from the date of the *act* allegedly done by the wrongdoer, rather than from the date of death. To adopt this interpretation would lead to an absurd result. In 1957 Steers and Knudsen performed the last act required of them by their contract. They would be protected against any claim of negligence by an injured person who was first hired more than two years after that date. This person may not have even heard of a Texas Tower, its function or operation in the two-year period. I am sure a manufacturer would be delighted if the law limited his liability for an accident caused directly by his fault to two years after delivery of his product.

---

4. The sixth claim of the Cudnik libel and and the third claim of the Brown libel are identical.

5. "§ 761. Right of action; where and by whom brought

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent rela-

tive against the vessel, person, or corporation which would have been liable if death had not ensued. Mar. 30, 1920, c. 111, § 1, 41 Stat. 537."

"§ 762. Amount and apportionment of recovery

"The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought. Mar. 30, 1920, c. 111, § 2, 41 Stat. 537."

Such, of course, is not the policy of a statute of limitations, which is to bar stale claims which otherwise would put an onerous burden on one seeking to defend a lawsuit.

The contention made by respondents has been urged in other cases involving this Texas Tower No. 4 disaster and has been overruled. Williams v. Moran, Proctor, Mueser & Rutledge, 205 F.Supp. 208 (S.D.N.Y.1962); Brown v. Anderson-Nichols & Co., 203 F.Supp. 489 (D.Mass. 1962). The wrongful act is the initial injury which here was on the date of death, not the creation of the condition which caused the injury. See Hughes, Death Actions in Admiralty, 31 Yale L.J. 115, 126 (1921); see also dissenting opinion of Judge Frank in Dincher v. Marlin Firearms Co., 198 F.2d 821, 823 (2d Cir. 1952).

The second set of exceptions, in which all respondents join, is to the claims for conscious pain and suffering, on the ground that such claims are not encompassed within the DHSA. The libels allege the claims to be based not only on the DHSA, but also "on the General Maritime Law" and "other applicable law."

■ It is generally accepted that the DHSA (sections 761 and 762, supra n. 5) does not provide recovery for pain and suffering experienced by the decedent prior to his death. The cited sections by their wording are plainly within the concept of a wrongful death statute, which creates a cause of action in favor of those who have suffered pecuniary loss by a death covered by the Act. It is not a survival statute, which allows suit on claims for physical injury, pain and suffering, and loss of wages arising prior to death which existed in favor of the injured person. Williams v. Moran, Proctor, Mueser & Rutledge, supra; Brown v. Anderson-Nichols & Co., supra; Petition of Gulf Oil Corp., 172 F.Supp. 911, 916–17 (S.D.N.Y.1959); United States v. The S.S. Washington, 172 F. Supp. 905, 908 (E.D.Va.), aff'd on the opinion below, sub nom. United States v. Texas Co., 272 F.2d 711 (4th Cir. 1959);

Noble v. Moore-McCormack Lines, Inc., 96 F.Supp. 369, 372 (D.Mass.1951); Decker v. Moore-McCormack Lines, Inc., 91 F.Supp. 560 (D.Mass.1950); see Hughes, supra, 31 Yale L.J. at 119–20; Comment, The Application of State Survival Statutes in Maritime Causes, 60 Colum.L.Rev. 534, 536 n. 16 (1960).

All of these cases deal with sections 761 and 762. However, section 765 provides that if during the pendency of an action by a person for injuries sustained by reason of a wrongful act, he shall die because of such act, his personal representative may be substituted in his stead and the action may proceed "as a suit under this chapter for the recovery of the compensation provided in section 762 of this title." On its face this section would turn a personal injury action into a wrongful death action, and thus there is the implication that the personal injury suit would not survive. See Petition of Gulf Oil Corp., supra, 172 F.Supp. at 916 n. 28.

There is little discussion in the authorities as to the meaning and purpose of section 765. In Pickles v. F. Leyland & Co., 10 F.2d 371 (D.Mass.1925) the court, in dictum, said that under this section "a suit survives which is brought by an injured person who dies after its commencement. This survival, however, is not that of a cause of action, but of an action actually begun." 10 F.2d at 372. It can readily be seen that the court was not talking about "survival" in the terms with which we are concerned. Actually it is referring to "revival" rather than "survival." See Comment, supra, 60 Colum.L.Rev. at 536 n. 16. In another dictum, citing the Pickles case, the court said "If reduced to an action at law before death occurs, then such action [for personal injuries] might survive." Decker v. Moore-McCormack Lines, supra, 91 F.Supp. at 561.

These two cases would indicate that the section does not mean what it says, whether it be denominated a "survival" or a "revival" statute. In any event, this section deals only with the disposition of a pending suit for personal injuries.

There is no statutory provision as to what rights, if any, exist in favor of the personal representative to recover for conscious pain and suffering when no suit therefor has been instituted during the lifetime of the decedent.

■ The exceptions on the ground that such claims are not encompassed within the DHSA are sustained, since the statute did not provide for such a suit, as was provided for seamen in the Jones Act, 46 U.S.C.A. § 688. Williams v. Moran, Proctor, Mueser & Rutledge, supra; Brown v. Anderson-Nichols & Co., supra.

■ It is generally asserted that under the general maritime law there is no survival of actions. Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Petition of Gulf Oil Corp., supra, 172 F.Supp. at 915; United States v. The S.S. Washington, supra, 172 F.Supp. at 908; McLaughlin v. Blidberg Rothchild Co., 167 F.Supp. 714 (S.D.N.Y.1958); Decker v. Moore-McCormack Lines, Inc., supra. Libellants contend that in the absence of federal legislation on the subject, admiralty will adopt the survival statute of some state, to save these claims.

■ The Supreme Court held that before the DHSA there was no action for wrongful death under the general maritime law. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). However, admiralty courts in the absence of the DHSA invoked state wrongful death statutes to grant such recovery. Western Fuel Co. v. Garcia, supra (death in territorial waters); The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907) (death on high seas). The DHSA created a federal cause of action for wrongful death on the high seas, and, when death occurs in territorial waters, preserved the rights given by the wrongful death statute of that state. 46 U.S.C.A. § 767. It is generally agreed that the DHSA does not pre-empt the field of recovery for injuries sustained on the high seas which result in death. See Comment, supra, 60 Colum.L.Rev. at 536–37, and authorities cited.

The Supreme Court has approved the application by admiralty of the survival statute of the state in whose territorial waters a tort occurs to save the claim against a deceased *tort-feasor*. Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941). Lower courts have reasoned by analogy and applied the survival statute of the state in whose territorial waters the tort occurred, to save the claims of a deceased *victim*. O'Leary v. United States Lines Co., 215 F.2d 708 (1st Cir. 1954), cert. denied, 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955); cf. Meade v. Luksefjell, 148 F.Supp. 708 (S.D.N.Y.1957) (revival of the suit).

There has been no determination by the Supreme Court as to whether a state statute may be applied in such a situation when the injuries resulting in death are sustained on the high seas. However, several lower courts have held that such an incorporation by admiralty is proper. Williams v. Moran, Proctor, Mueser & Rutledge, supra; Petition of Gulf Oil Corp., supra; United States v. The S.S. Washington, supra; McLaughlin v. Blidberg Rothchild Co., supra (claim of seaman based on unseaworthiness); Holland v. Steag, Inc., 143 F.Supp. 203 (D.Mass.1956) (same). There is dictum in a recent decision of the Court that, as to accidents occurring on the high seas, "presumably any claims, based on unseaworthiness, for damages accrued prior to the decedent's death would survive, at least if a pertinent state statute is effective to bring about a survival of the seaman's right." Kernan v. American Dredging Co., 355 U.S. 426, 430 n. 4, 78 S.Ct. 394, 2 L.Ed. 2d 382 (1958).

■ Therefore, I hold that if a relevant state statute provides for survival of such claims, admiralty will entertain them.

The question next arises as to which state's statute should be applied. See

generally Comment, supra, 60 Colum.L. Rev. at 543–53. From a review of the cases I find that the proper survival statute to be applied by an admiralty court is the statute of the state in which the tort-feasor is domiciled.

Before the DHSA provided an action for wrongful death the courts, in choosing the appropriate state wrongful death statute in order to furnish a recovery, looked to the law of the domicile of the tort-feasor. The Hamilton, supra, involved a collision between two vessels, each of which was owned by a Delaware corporation. The Court held that the Delaware wrongful death statute could be applied since it was the law of the domicile of the tort-feasor.

In The James McGee, 300 Fed. 93 (S.D.N.Y.1924) Judge Learned Hand, in applying the wrongful death statute of the domicile of the tort-feasor, said,

> "There is no reason why a sovereign should not undertake to impose on persons domiciled within its borders obligations conditioned on events occurring on the seas, since there is no other sovereign with whom its will conflicts. Therefore the question comes merely to whether the sovereign of the domicile has clearly enough indicated such a purpose." 300 Fed. at 96.

This jurisdiction which arises out of the nationality of the ship "partakes more of the characteristics of personal than of territorial sovereignty." Cunard S.S. Co. v. Mellon, 262 U.S. 100, 123, 43 S.Ct. 504, 67 L.Ed. 894 (1923); The James McGee, supra, 300 Fed. at 96.

Three of the five cases that have considered the problem as it involves which survival statute should apply followed the Hamilton rule in choosing the tort-feasor's domicile without discussion of the basis for such application. United States v. The S.S. Washington, supra; McLaughlin v. Blidberg Rothchild Co., supra; Holland v. Steag, Inc., supra.

In Petition of Gulf Oil Corp., supra, the court held that when a collision occurs between ships flying different flags, the law of the forum as to survival of actions would usually be applied.[6] The court pointed out, however, that "when a death on the high seas does not arise out of a collision, the law of the state of the ship applies." 172 F.Supp. at 918 n. 47.

The instant case differs somewhat from the ordinary maritime case, in that the respondents in the claims involved on these exceptions did not own the vessel on which decedents died. It would be inappropriate to determine the liability of these respondents by the law of the domicile of the shipowner under the rationale of Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), The Hamilton, and The James McGee, since it is the law of domicile of the *tort-feasor* rather than the law of the domicile of the shipowner, which imposes liability on them.

■ J. Rich Steers, Inc., is a New York corporation; Moran is a New York partnership. N.Y. Decedent Estate Law § 119 provides for survival of actions for personal injury. Knudsen is a Delaware corporation; such survival is provided in Del. Code Ann. tit. 10, § 3701 (1953). Therefore, these exceptions are overruled insofar as the claims rely on these statutes.

■ The issue presented by the third set of exceptions is raised only by Steers. Suit has been brought against it as a member of a joint venture, for negligent acts allegedly committed by it as a joint venturer. The joint venture had terminated in 1957 and the decedents were employed at the time of their

---

**6.** Since the forum in that case was admiralty, which denies survival of actions, this rule might have resulted in a denial of recovery. However, since the case involved a limitation proceeding, and claimants had no choice of forum, the court allowed recovery under equitable principles that in limitation proceedings a claimant will be permitted to recover if he might have recovered in a common law action in another forum. Thus, Pennsylvania law was applied since, as the tort-feasor resided there, he might have been sued there by the claimant.

death solely by Steers. Libellants' claims for workmen's compensation are being administered under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–33, as incorporated in the Defense Base Act, 42 U.S.C.A. §§ 1651–54 (hereinafter LHWCA). Libellants concede that these compensation statutes apply to the Texas Tower. Query whether the suit may be maintained.

Each libellant has alleged one claim against Steers. The claim alleges that Steers and Knudsen "were joint venturers under a written contract entered into between them, and all work, labor and services they performed for Respondent UNITED STATES OF AMERICA, with respect to Texas Tower No. 4, was performed by them both as joint venturers and in an individual capacity." The libels further allege that Steers and Knudsen were employed by the United States, individually and as joint venturers, to construct the tower, that they did so, and that they turned it over to the Navy in November 1957. Various acts of negligence, which are claimed to have caused the collapse of the tower in 1961, are detailed. The libels also allege that on or about September 27, 1960, the United States entered into a different contract, with Steers alone, to perform labor and services on the tower, and to place workmen on the tower. When the tower collapsed the decedents were on it, apparently pursuant to this repair contract.

The LHWCA establishes a compensation scheme for persons injured or killed in the course of their employment. Section 905 provides that:

> "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * * *." [7]

Section 933(a), (i) permits the claimant to institute action against "some person other than the employer or a person or persons in his employ" who may be liable in damages.

The libellants argue that a joint venture is a third person within the meaning of section 933, even though the employer is one of the joint venturers. They admit that they have found no case in point under any compensation act.[8] Steers argues that since the decedents were covered by compensation provided by Steers, recovery cannot be had against it as a joint venturer for acts done by the joint venture.

In the instant case, the joint venture had, according to the allegations of the libels, terminated over three years prior to the accident. Decedents were not employed by the joint venture at the time of the accident, and indeed the Cudnik libellants assert in their brief that none of their decedents were employed by Steers until after the joint venture end-

---

**7.** While for other reasons I hold that libellants' claims against Steers are not barred by this section, I find the distinction attempted to be drawn by Brown between claims for wrongful death and for conscious pain and suffering untenable. This section plainly precludes *all* actions against an employer who is covered by the Act with respect to the injury sustained.

**8.** Libellants rely on two Minnesota cases holding that a negligent partner is liable in damages to an employee of his partnership, notwithstanding the fact that the partnership is covered by workmen's compensation. Monson v. Arcand, 244 Minn. 440, 70 N.W.2d 364 (1955); Id., 239 Minn. 336, 58 N.W.2d 753 (1953); Gleason v. Sing, 210 Minn. 253, 297 N.W. 720 (1941). These cases are based on the theory that a partnership is an entity distinct from its partners, a theory that is not recognized by New York, Williams v. Hartshorn, 296 N.Y. 49, 69 N.E.2d 557 (1946); Minsky v. Baitelman, 281 App.Div. 910, 120 N.Y.S.2d 86 (2d Dept. 1953), or by the majority of states. Mazzuchelli v. Silberberg, 29 N.J. 15, 148 A.2d 8 (1959); Parker v. Zanghi, 45 N.J.Super. 167, 131 A.2d 802 (1957); see Weingarten v. Universal C. I. T. Credit Corp., 302 F.2d 1 (2d Cir. 1962).

ed. Consequently, the joint venture was not responsible for workmen's compensation for the death of these decedents and can not escape third party liability on this ground. It is obviously a fortuitous circumstance that the actions of the joint venturers subsequently took effect on employees of one of them.

I hold, therefore, that Steers, as a joint venturer, is a "third party" with respect to Steers as a builder of the tower. These exceptions are overruled.

Motion disposed of as indicated in this opinion. So ordered.